## STATE OF TEXAS

v.

## NATIONAL COUNCIL OF ALLIED EMPLOYEES, et al.

### Civ. No. A–92–CA–205.

United States District Court,
W.D. Texas,
Austin Division.

April 27, 1992.

Elizabeth M. Marsh, Lynch, Chappell, Allday & Alsup, Austin, Tex., for plaintiff.

Anthony Icenogle, De Leon, Boggins & Richards, Austin, Tex., Gary F. DeShazo, Gary DeShazo & Assoc., Austin, Tex., for defendants.

Heidi B. Schwartz, pro se.

Laurie L. Weiss, pro se.

## OPINION AND ORDER

NOWLIN, District Judge.

Pursuant to 28 U.S.C. § 1446(c)(5), this Court held an evidentiary hearing to determine whether to grant or deny the petition to remove filed by various defendants and joined in by the other defendants appearing at the hearing. 28 U.S.C. § 1446(c)(5). Not long ago, the law may have been more inclined in favor of preemption in this case, but recent decisions of the Fifth Circuit and the United States Supreme Court have restricted somewhat the overall very broad preemptive reach of ERISA.

Initially, the State argues that its claims should not be preempted based upon "the well-pleaded complaint rule." The State argues that merely because it does not have standing to bring these claims in federal court that the State should be allowed to bring these claims in state court. Clearly evident from the Act, Congress intended to preempt from state regulation and control certain entities and plans. The state is not allowed to regulate or tax these entities and plans. The "deemer clause" prohibits the State from merely declaring that an ERISA plan is subject to state control and regulation. Merely because the State lacks standing to sue in federal court does not give the State the right to sue in state court. Rather, if this cause and its claims are preempted by ERISA, this Court would have jurisdiction and the State would have to be dismissed as an improper party for lack of standing.

■ As the State has correctly argued, removing defendants do generally have the burden to show that the federal court would have jurisdiction over the lawsuit if the plaintiff initially sued in federal court. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 19 and n. 18, 103 S.Ct. 2841, 2851 and n. 18, 77 L.Ed.2d 420 (1983). However, reiterating an independent corollary to the well-pleaded complaint rule, the Supreme Court stated that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *See id.*, 463 U.S. at 22, 103 S.Ct. at 2853 (citations omitted).[1] Also, original federal jurisdiction is available if either: (1) some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims; or, (2) one of the claims is effectively one of federal law. *See id.*, 463 U.S. at 13, 103 S.Ct. at 2848. The Court explained:

> [A]ny state action coming within the scope of § 502(a) [29 U.S.C. § 1132(a)] would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without out reference to federal law.

*See id.*, 463 U.S. at 24, 103 S.Ct. at 2854. When the federal claim arises only as a defense to a state created action, federal declaratory judgment jurisdiction is lacking. *See id.*, 463 U.S. at 16, 103 S.Ct. at 2850 (citing to and quoting from 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2767, pp. 744–745 (2d ed. 1983)). If the state courts reject a claim of federal preemption, that decision may ultimately be reviewed on appeal by the United States Supreme Court. *See id.*, 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12. Therefore, although removal is not proper in this case for other reasons discussed

---

1. The State did not mention this rule in its written or oral argument before this Court.

below, the defendants may nevertheless argue in state court that, because of ERISA, they are not subject to state laws and regulations concerning their plans.[2]

■ In a decision rendered on the same day as *Franchise Tax Board v. Construction Laborers Vacation Trust*, the Supreme Court noted that the *Construction Laborers Vacation Trust* decision involved an action seeking a declaration that state laws were *not* preempted by ERISA but that the pending action involved an action in which companies subject to ERISA regulation sought injunctions against claims that *are* preempted by ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14 (1983) (emphasis in original). Similarly to *Shaw v. Delta Air Lines*, the issue in this action is whether the State's claims "relate to" employee benefit plans within the meaning of 29 U.S.C. § 1144(a), and, if so, whether any exception in ERISA saves them from preemption. *See id.*, 463 U.S. at 96, 103 S.Ct. at 2899.

Section 1003 states that ERISA generally applies to any employee benefit plan established or maintained:

> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
>
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
>
> (3) both.

29 U.S.C. § 1003(a). However, ERISA is not applicable to an employee benefit plan that "is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3). Also, ERISA does allow state law to apply to an employee welfare benefit plan which is a fully-insured multiple employer arrangement and to multiple employer welfare arrangements that fall within § 1003(b)(3). *See* 29 U.S.C. § 1144(b)(6). For other multiemployer arrangements, state laws are preempted to the extent inconsistent with ERISA. *See id.*

The primary issue is whether or not the various claims asserted by the State are fully preempted by ERISA. 29 U.S.C. § 1144(a) is the general preemption provision of ERISA:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a). This ERISA provision also contains what is referred to as the "savings clause," § 1144(b)(2)(A), which exempts some State regulation from the general preemption:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A).

Subparagraph (B), § 1144(b)(2)(B), is referred to as the "deemer clause," which keeps the state from deeming certain employee benefit plans as falling within the "savings clause:"

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

---

**2.** This court's statements are not intended to, nor should they, have any preclusive effect on the state court's consideration of the defendants' substantive preemption defense under ERISA. *See Soley v. First National Bank of Commerce,* 923 F.2d 406, 409 (5th Cir.1991).

29 U.S.C. § 1144(b)(2)(B). A major issue in determining whether preemption is proper in this cause is whether the removing defendants fall within the protection of the "deemer clause," 29 U.S.C. § 1144(b)(2)(B).

The Fifth Circuit affirmed this Court's decision concerning the Texas Administrative Services Tax Act ("ASTA") and ERISA. *See E–Systems, Inc. v. Pogue,* 929 F.2d 1100, 1101 (5th Cir.1991) *cert. denied* — U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). The Fifth Circuit concluded that ERISA did preempt the causes of action involving ASTA. *Id.* at 1102–1103. When state laws "relate to" ERISA plans that are self-funded and self-administered, the court held that, under the Supremacy clause, ERISA preempts such state laws. *See id.* at 1102 and 1103.

The statutory language of ERISA provides the starting point for the determination of whether these claims are preempted by ERISA. ERISA itself provides the some definitions for terms which are pertinent to this action.[3] ERISA also broadly defines "State" to include all fifty states and the territorial possessions of the United States. 29 U.S.C. § 1002(10).

In a very recent case, the United States Supreme Court adopted a common-law test for determining who qualifies as an "employee" under ERISA.[4] *See Nationwide Mutual Insurance Co. v. Darden,* — U.S. ——, ——, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). In light of the circular definition within the Act, the Supreme Court stated that the general common law of agency should be applied to determine the parameters of the term "employee", rather than the law of any particular state. *See id.,* and n. 3. The Court then stated its test to determine if a person is an employee:

"In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*See id.* (quoting from *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–752, 109 S.Ct. 2166, 2178–2179, 104 L.Ed.2d 811 (1989) (footnotes omitted)). The federal court must weigh and assess all of the incidents of the relationship with no one factor being decisive. *See id.,* — U.S. at ——, 112 S.Ct. at 1349. Applying these factors to the present case, this Court has been presented with no evidence to establish an employee-employer relationship between the defendants and any of the State's witnesses.

Following the Supreme Court's rationale in *Darden,* this Court now adopts a similar common law test to determine whether a labor organization is an entity in which employees "participate" for the purposes of ERISA. *See* 29 U.S.C. § 1002(4). Al-

---

**3.** Specifically, ERISA defines these terms:
(1) "employee benefit plan" or "plan:"
an employee welfare benefit plan or an employee pension benefit plan or a plan which is both.... 18 U.S.C. § 1002(3);
(2) "person:"
an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization. 29 U.S.C. § 1002(9); and
(3) "multiemployer plan:"

a plan—(i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation. 29 U.S.C. § 1002(37)(A).

**4.** ERISA defines "employee" as:
"any individual employed by an employer." 29 U.S.C. § 1002(6).

though ERISA defines a "participant" under the act as someone who is or may be entitled to receive benefits under the plan,[5] Congress must have intended something more in its use of the verb "participates" in ERISA's definition of employee labor organization.[6]

The defendants have not shown that the federal courts owe any deference to the legal conclusions in the opinion letter from the National Labor Relations Board. *See Darden,* —— U.S. at —— n. 5, 112 S.Ct. at 1349 n. 5 (citing *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). The NLRB opinion letter relied upon by the defendants does not directly discuss the defendants in this action. *See* Department of Labor, Pension and Welfare Benefit Plans, Opinion Letter 91–06 (January 15, 1991). Also, the letter assumes that the entities' agreements constitute bona fide collective bargaining agreements. See *id.* at 4. Although the Opinion Letter seems to decide that the "members" of an entity "participate" in that entity merely by virtue of having the "right" to hold office and vote in the entity, a more thorough evaluation is necessary to determine whether alleged "employees" of an alleged labor organization entity actually "participate" in that entity.

The various witnesses for the State all indicated that they had no idea that they were in any way members of a union or labor organization. Mr. Whitmire was the only subscriber to the program who initially knew the name of the plan that actually was providing coverage to him. Mr. Whitmire is an insurance agent who joined the program after he was solicited to do so. He does not consider himself a union member. Indeed, Mr. Whitmire's relationship to the defendant entities appears to be the same type of relationship in the *Darden* case, discussed above, in which the Supreme Court found that a similarly situated individual would not able to assert a claim under ERISA if the person is not an "employee."

Mr. Whitmire testified that he does not participate in any way in the running of the program and he apparently had no knowledge of any "right" that he might have had to participate. These witnesses did not exercise any day-to-day control over any aspect of the defendant entities or their plans. None of the witnesses knew of any alleged voting rights or participatory rights that they might have. No matter what factors should be applied, the various testifying individuals who were subscribing to the programs offered by the defendants did not "participate" in the defendants' organizations.

The defendants have not shown that these individual subscribers are "employees" within the test set forth in *Darden.* The defendants have also not proven that these witnesses "participate" in the defendants' organization. Additionally, various witnesses testified that they were merely paying premiums to comply with the State's workers' compensation laws.

Applying the "deemer clause," the Supreme Court has explained:

> Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

---

5. Under ERISA a "participant is:"

    any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefits.

    29 U.S.C. § 1002(7).

6. ERISA defines an "employee organization as:"

    any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

    29 U.S.C. § 1002(4).

*FMC Corporation v. Holliday,* —— U.S. ——, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The statutory "deemer clause" by its own terms does not apply to plans which are exempt under § 1003(b), including plans solely maintained to comply with the applicable worker's compensation laws. Several witnesses who testified for the State indicated that the only reason that they paid premiums to these plans was so that they would comply with the State's worker's compensation law.

In *Holliday,* the Supreme Court has explained the preemption clause:

> The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA.

*Id.* The Supreme Court broadly reads this clause to ensure that the regulation of employee benefit plans remains within the federal forum. *See E–Systems, Inc. v. Pogue,* 929 F.2d 1100, 1103 (5th Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991) (citing to *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)). "The preemptive scope of ERISA is 'intended to apply in the broadest sense in all actions of State or local governments which have the force of law.'" *Id.* (citing to and quoting from *Pilot Life Insurance,* 481 U.S. at 46, 107 S.Ct. at 1552).

The Fifth Circuit has adopted the rationale of an en banc decision of the Eleventh Circuit to determine *if* a plan is established under ERISA. *See Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 240–241 and n. 4 (5th Cir. 1990). "[A]n ERISA plan is established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of the financing, and procedures for receiving benefits.'" *See id.* (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)) (footnote omitted). A subscription by a person to a multiemployer trust does not fall within the definition of a "plan, fund, or program," under 29 U.S.C. § 1002(1):

> "where, as here, the purchasing employer neither directly or indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.... The corporation did no more than make payments to a purveyor of insurance, patently for tax reasons."

*Id.* at 242 (citing to and quoting from *Taggert Corp. v. Efros,* 475 F.Supp. 124, 127 (S.D.Tex.1979)). The defendants have not met their burden to show that the situation is any different in this cause of action.

Another major issue before this Court is whether these defendants are self-funded or not. This question seems to turn primarily on who bears the risk under the plan. If for example, an ERISA plan only contracted out for someone to "administer" the plan but the ERISA plan retained all of the risk of loss due to claims made under the plan, such a plan would be a self-funded plan. If a plan paid premiums to someone or some entity then the plan would not be self-funded. By applying substance over form in to this issue, the "employers" who purchased this insurance have not been shown to be bearing the risk. Rather, the plan itself appears to be bearing the risk.

In *Holliday,* the Supreme Court limited the preemption to employee benefit plans that are "self-funded:"

> [T]he deemer clause [exempts] self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance."

*Holliday,* —— U.S. at ——, 111 S.Ct. at 409. Self-funded ERISA plans are exempt from state regulation to the extent that the regulation relates to the plans. *Id.* The Supreme Court recognized the consistency of its ruling with the rationale of its earlier decision:

> "In light of ERISA's "deemer clause" which states that a benefit plan shall not

"be deemed an insurance company" for purposes of the insurance saving clause, [the State] has never tried to enforce [the statute] as applied to benefit plans directly, effectively conceding that such an application of [the statute] would be preempted by ERISA's pre-emption clause."

*Id.* (quoting from *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 735, n. 14, 105 S.Ct. 2380, 2387, n. 14, 85 L.Ed.2d 728 (1985)). The Supreme Court clarified the effect of its decision in *Holliday:*

> Our interpretation of the deemer clause make clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured [*i.e.*, self-insured], the State may not regulate it.

*Holliday,* —— U.S. at ——, 111 S.Ct. at 411. The Court did not want employers to be confronted with "conflicting or inconsistent" State and local regulation of ERISA plans. *Id.*

The Supreme Court explained the distinction between the State's ability to regulate self-funded ERISA plans and those that are not:

> State laws directed toward [ERISA] plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of state laws. On the other hand, employee benefit plans that are insure are subject to indirect state regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Holliday,* —— U.S. at ——, 111 S.Ct. at 409. "[T]he saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans." *Id.,* —— U.S. at ——, 111 S.Ct. at 411.

■ The defendants have argued that the plans at issue are self-funded and that the plans are therefore preempted by ERISA. In a closely analogous case, the Fifth Circuit has recently decided to the contrary. The Fifth Circuit has clarified the difference between a "self-insured" plan and an "insured" plan. *See MDPhysicians & Associates v. State Board of Insurance,* 957 F.2d 178 (5th Cir.1992). A multi-employer welfare arrangement ("MEWA") that is an employee welfare benefit plan under ERISA does qualify for the limited preemption under ERISA from state insurance regulations. *See id.* at 180. MEWAs that do not qualify as employee benefit welfare plans under ERISA are subject to state regulation. *Id.* Whether a plan constitutes an "employer welfare benefit plan" is a question of fact. *Id.*

The Fifth Circuit proceeded to address what types of plans are covered under ERISA:

> ERISA applies to "any employee benefit plan if it is established or maintained (1) by an employer ...; or (2) by an employee organization ...; or (3) by both" an employer and an employee organization. 29 U.S.C. § 1003(a). ERISA defines an "employee welfare benefit plan" as any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, ... for the purpose of providing its participants or their beneficiaries [with certain medical and health benefits] through the purchase of insurance or otherwise. 29 U.S.C. § 1002(1).

*Id.* at 182 (footnote omitted). In deciding whether a particular arrangement constitutes an employee benefit plan under ERISA, a court must initially satisfy itself that there is a proper ERISA plan. *Id.* at 183.

To fall within the scope of the term "employer" under ERISA, an entity must prove that it acted:

(1) *directly as an employer* in relation to an employee benefit plan; or

(2) *indirectly in the interests of an employer* in relation to an employee benefit plan.

*Id.* at 182–83 (emphasis in original) *citing* 29 U.S.C. § 1002(5). The second characterization makes "a *group or association of employers acting [indirectly] for an employer*" an "employer" under ERISA. *Id.* (emphasis in original). The Fifth Circuit held that the multiemployer welfare arrangement in the case did not act indirectly for the subscribing employers but rather *for itself. Id.* at 185. The entities primary interest was in profiting from the provision of medical and administrative service. *Id.* The Fifth Circuit stated:

To allow an entrepreneurial venture to qualify as an "employer" by establishing and maintaining a multiple employer welfare arrangement without input by the employers who subscribe to the plan would twist the language of the statute and defeat the purposes of Congress.

*Id.* Although none of the parties have demonstrated any profit-making motives of the defendants, the arrangement does seem to lack the ability for input by the subscribers to the plan.

This Court need not decide whether the plans at issue here are more properly characterized as a multiemployer welfare plan or an employee organization plan. Regardless, the removing parties have not met their burden to show that ERISA should preempt these plans from state law. Initially, the defendants have not shown that their entities constitute plans that would be subject to preemption under ERISA. If the defendants do constitute an employee organization, the various subscribers have not been shown to be *employees* who *participate* in the organization. If the defendants constitute a multiemployer plan, such a plan as the one in this case is not preempted from state regulation by ERISA.

The defendants argue for the application of the rationale from the Supreme Court's holding that a lawsuit based upon common law claims of general application is not a law regulating insurance. *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). That case involved a suit by private citizens against an insurance company under 29 U.S.C. § 1132. § 1132 permits civil actions to be brought by: a participant or a beneficiary of an employee benefit plan; the Secretary; or a fiduciary. 29 U.S.C. § 1132(a). The Court held that causes of action within this civil enforcement provision, § 1132(a), are clearly preempted by ERISA and, therefore, removable to federal court. *Metropolitan Life Insurance Co.*, 481 U.S. at 66, 107 S.Ct. at 1548. This preemption rule applies whether preemption was obvious or not at the time the suit was filed. *Id.* The Court held that the suit, which purported to raise only state law claims, is necessarily federal in character and is removable to federal court, pursuant to 28 U.S.C. § 1331 and § 1441(b). *Id.*, 481 U.S. at 67, 107 S.Ct. at 1548. That decision does not appear to be applicable to the present cause of action.

In conclusion, the defendants have not met their burden to show that they are indeed plans that are subject to preemption under ERISA. The State, on the other hand, has shown that this cause of action should be remanded because this action is not preempted under ERISA. The State Attorney General should contact and work with the United States Department of Justice and Department of Labor to determine if any federal violations have occurred and a federal action should be instituted. This ruling should not be used in any way with the State's allegations against the various defendants, both individuals and entities. Many of the defendants may not be proper defendants in the state action, but the State court can and will address those issues.[7]

---

**7.** The defendants are not without some recourse in the state action. If a defendant prevails on

certain claim made by the State and if the defendant can then show that the State's claim

IT IS ORDERED, ADJUDGED, AND DECREED that the petition for removal in this case is DENIED.

ACCORDINGLY IT IS FURTHER ORDERED that the above numbered and styled cause is hereby REMANDED, pursuant to 28 U.S.C. § 1447(c), to state court.

All parties shall bear their own fees, costs, and expenses incurred as a result of this action.

was frivolous, unreasonable, or without foundation, the defendant would be able to collect reasonable attorney's fees and court costs from the state agency, here the State Attorney General's Office, making the claim. *See generally* Tex.Civ.Prac. & Rem.Code Ann. § 105 (Vernon 1986 and 1992 Supp.).