CV2-392 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-392-CV





NATIONAL COUNCIL OF ALLIED EMPLOYEES, ET AL.,



 APPELLANTS


vs.





STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 92-04263, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 




PER CURIAM



 NCAE and Local-615 (1) appeal the trial court's order granting the State of Texas a
temporary injunction and imposing a bond requirement. The State sued in quo warranto, alleging
that appellants were engaged in the unauthorized business of insurance. The State applied for a
temporary injunction and requested that a bond be imposed. Tex. Ins. Code Ann. art. 1.36, § 11
(West Supp. 1994). Appellants contend that ERISA (2) preempts state regulation of their activities
and that the bond requirement violates rights under the United States Constitution and the Texas
Constitution. We will affirm the trial court's order. 



TEMPORARY INJUNCTION


 The first point of error we will consider (point E-1) is contained in the brief filed
by the International Association of Entrepreneurs of America, Inc. ("Entrepreneurs"). (3) In this
point, appellants contend that the trial court abused its discretion in granting a temporary
injunction because the evidence does not support the State's probable right to recovery. As the
applicant for the temporary injunction, the State had to plead a cause of action, show a probable
right to recovery and a show a probable injury would be sustained during the pendency of the trial
if the temporary injunction were not issued. Transport Co. of Texas v. Robertson Transports,
Inc., 261 S.W.2d 549, 552 (Tex. 1953). Appellants do not contend that the State has failed to
meet any other requirement for obtaining a temporary injunction but assert only that the State
cannot show a probable right to recovery because appellants are engaged in activities controlled
by ERISA and state action is preempted. We disagree. The trial court did not abuse its discretion
in granting the temporary injunction because the State, as applicant, met its burden of proof to
show a probable right to recovery, based on the resolution of a disputed fact issue about the
existence of a plan controlled by ERISA. Unless ERISA controls, ERISA preemption cannot
occur.



Standard of Review

 The trial court has broad discretion in granting or denying a temporary injunction,
and its action will not be reversed on appeal unless the trial court clearly abused its discretion. 
Davis v. Huey, 571 S.W.2d 859, 861-62 (Tex. 1978). The test for an abuse of discretion is
whether the trial court acted without reference to any guiding rules or principles, that is, in an
arbitrary and unreasonable manner. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). An abuse of discretion can occur if a
court exercises its discretion without sufficient facts from which it may make a rational decision. 
Reyna v. Reyna, 738 S.W.2d 772, 774 (Tex. App.--Austin 1987, no writ); see also Landon v.
Jean-Paul Budinger, Inc., 724 S.W.2d 931, 939-40 (Tex. App.--Austin 1987, no writ).

 Although many cases state that if conflicting evidence is presented, the appellate
court must decline to hold that the trial court abused its discretion in rendering its order, see, e.g.,
Davis, 571 S.W.2d at 862; Henderson v. KRTS, Inc., 822 S.W.2d 769, 773 (Tex. App.-Houston
[1st Dist.] 1992, no writ), this Court has expanded on that statement and said that whether a court
has abused its discretion must be determined with regard to the entire context of the proceeding,
including the circumstance that the trial court had a fact dispute before it. Anderson Oaks v.
Anderson Mill Oaks, 734 S.W.2d 42, 44 (Tex. App.--Austin 1987, no writ).

 "Probable right to recover" does not mean that the judge at the hearing on the
temporary injunction predicts the applicant's chances of success at trial, based upon the judge's
estimate of where the truth probably lies. Id. at 44 n.1. Rather the applicant, with regard to both
facts and law, need show only that a bona fide issue exists as to his right to ultimate relief." Id.
(quoting L. Hamilton Lowe, Remedies § 153 at 188 (Texas Practice 2d ed. 1973)). The
requirement of demonstrating the likelihood of prevailing on the merits requires evidence from
an applicant that will at the least tend to support a right to recovery. Id. (citing Bob E. Shannon,
Charles F. Herring, Jr., & J. Matthew Dow, Temporary Restraining Orders and Temporary
Injunctions in Texas--A Ten Year Survey, 1975-85, 17 St. Mary's L.J. 689, 717-18 (1986)).



ERISA Preemption

 Appellants contend that the State cannot show a probable right to recover because
ERISA preempts any State law regulation of the activities about which the State complains. As
authority for the proposition that ERISA covers appellants' activities, they rely on a decision from
a United States District Court in Phoenix, Arizona, (4) and its "finding" that United Labor Council
Local 615 Welfare Fund is an "employee welfare benefit plan" within the meaning of ERISA. 
A copy of the order, signed after the signing of the temporary injunction in this cause, is attached
to the Entrepreneurs' brief.

 We note first, that the finding of fact appellants cite was an agreed one between
the plaintiff Secretary of Labor and defendants Herbert Marshall, David Marshall, Douglas Carpa,
and Fred Goodman and was adopted by the Court only as to those defendants. (David Marshall
and Fred Goodman were not defendants below in this cause). Appellants supply no authority for
why this agreed determination should have any preclusive effect on the previously rendered Texas
state court determination. (5) Appellants cite no authority other than that supporting general
propositions on the issue of ERISA preemption. Neither appellants nor the State refer (6) to the
multiple-volume statement of facts from the temporary injunction hearing.

 ERISA preemption is complex. See, e.g., John F. Wagner, Jr., Construction and
Application of Preemption Exemption, Under Employee Retirement Income Security Act (29
USCS §§ 1001 et seq.), for State Laws Regulating Insurance, Banking, or Securities (29 USCS
§ 1144(b)(2)), 87 ALR Fed 797-863 (1988); E. Thomas Bishop and Paula Denney, Hello ERISA,
Good-Bye Bad Faith: Federal Pre-emption of DTPA, Insurance Code, and Common Law Bad
Faith Claims, 41 Baylor L. Rev 267-289 (1989); William J. Kilberg & Paul D. Inman,
Preemption of State Laws Relating to Employee Benefit Plans: An Analysis of ERISA Section 514,
62 Tex. L. Rev. 1171-1361 (1984). Before launching into the complexities of preemption
analysis, however, we must determine whether ERISA applies to the activities. For ERISA to
apply, an "employee welfare benefit plan" must exist. Meredith v. Time Ins. Co., 980 F.2d 352,
354 (5th Cir. 1993); MDPhysicians & Assocs., Inc. v. State Bd. of Ins., 957 F.2d 178, 182-83
(5th Cir. 1992).

 An "employee welfare benefit plan" is



any plan, fund or program . . . established or maintained by an employer or by an
employee organization, or by both, . . . to the extent that such plan, fund, or
program was established or maintained for the purpose of providing its participants
or their beneficiaries, through the purchase of insurance or otherwise, [with certain
medical and health benefits].



29 U.S.C. § 1002(1) (1988). An "employee" means "any individual employed by an employer." 
29 U.S.C. § 1002(6) (1988). An "employee organization" is:



any labor union or any organization of any kind, or any agency or employee
representation committee, association, group, or plan, in which employees
participate and which exists for the purpose, in whole or in part, of dealing with
employers concerning an employee benefit plan, or other matters incidental to
employment relationships; or any employees' beneficiary association organized for
the purpose in whole or in part, of establishing such a plan.



29 U.S.C. § 1002(4) (1988). A "multiple employer welfare arrangement" provides benefits to
"two or more employers." 29 U.S.C. § 1002(40)(A) (1988). All multiple employer welfare
arrangements, however, do not qualify as "employee welfare benefit plans" under ERISA. 
Meredith, 980 F.2d at 354.

 The line between multiple employer welfare arrangements that are employee
welfare benefit plans under ERISA, and multiple employer arrangements by which a group of
entities "pool" premiums to buy insurance through an entity that may in essence be an
entrepreneurial venture organized to sell, purchase, or administer insurance, has been
troublesome. In MDPhysicians, the court considered whether a multi-employer welfare
arrangement qualified as an ERISA plan. 957 F.2d at 178. MDPhysicians sponsored and
marketed an insurance plan. Over one hundred disparate employers subscribed to the plan and
paid a monthly per-employee fee. Id. at 180. The court held that the organization sponsoring the
plan did not act directly as an employer because no employment or economic relationship existed
between it and the employees of subscribing employers. Id. at 183. The subscribing employers
did not participate in the operation of the plan. Id. The court focused on the relationship between
the entity offering the plan and the recipients of the benefits; the entity that maintains the plan and
the individuals that benefit must be tied by a common economic interest, unrelated to the provision
of benefits. Id. at 186. 

 Taggart Corp. v. Life & Health Benefits Administration, Inc., 617 F.2d 1208 (5th
Cir. 1980), involved an entity called the Security Multiple Employers Trust, which provided
insurance to employers too small to secure group insurance on their own. Employers became
members of SMET, which then pooled premiums to purchase insurance. Id. at 1210. Taggart
purchased insurance through SMET for its sole employee, Stanley Kansas. The court found that
SMET was neither established nor maintained by an employer or an employee organization. Id. 
Rather, SMET was a proprietary enterprise that acted as a "mere conduit" for hundreds of
unrelated subscriber customers, forwarding premium payments to a group insurer. Id. Neither
Taggart nor any other employer participated in SMET's operation or administration. The court
concluded that ERISA plans are broader in scope than a pure insurance transaction. Id. at 1211.



Probable Right to Recovery

 Similarly, the existence of an employment relationship as opposed to the mere sale
and purchase of insurance is the essential problem in this case. (7) If an employment relationship
exists, ERISA applies and preempts state regulation. The State, therefore, could not show a
probable right to recovery.

 Whether an benefit program qualifies as an ERISA plan is a factual determination. 
See MDPhysicians, 957 F.2d at 178 (5th Cir. 1992); Burghart v. Connecticut Gen. Life Ins. Co.,
806 S.W.2d 324, 327 (Tex. App.--Texarkana 1991, no writ). In reviewing the statement of facts,
we note that the existence of an employee organization in the form of a union was vigorously
disputed. The State called several witnesses who testified that they had purchased health insurance
through appellants, but were not union members; that they did not participate in the union and
were unaware of any right to such participation. The fact situation presented in this case is
analogous to those in MDPhysicians, 957 F.2d at 178, and Taggart, 617 F.2d at 1208, in that
there appears to be a lack of an "employer" or "employee organization" or a common economic
interest between the entity offering the plan and the individuals that benefit from it.

 The trial court had before it evidence from which it could conclude that no
employee welfare benefit plan covered by ERISA existed. If a benefit program is not a plan
controlled by ERISA, then ERISA would not preempt Texas law. The court had before it enough
evidence to show a probable right to recovery; it did not need to make a final determination that
the State would prevail on the merits. The court did not abuse its discretion in issuing the
injunction. We overrule point of error E-1 (and all points adopting it) and conclude the granting
of the temporary injunction was not an abuse of discretion.



BOND REQUIREMENT


 In two points of error, appellants contend that the trial court erred in imposing a
bond requirement because the requirement to post the bond violated their federal and state
constitutional rights (NCAE-1); and because there was no evidence or insufficient evidence to
support requiring the bond (NCAE-2). (8) 



The Insurance Code

 The trial court imposed the bond under the authority of Texas Insurance Code Ann.
art 1.36, § 11(a)(1) (West Supp. 1994), which provides that:



"Before an unauthorized person or insurer files or has filed any pleading in any
court action, suit or proceeding . . . that person or insurer must either:


 (1) deposit with the clerk of the court in which the action suit or proceeding
is pending cash or securities or a bond . . . in an amount to be determined by the
court sufficient to secure the payment of any final judgment that may be rendered
in that court proceeding . . . .



The statute further provides that the court may dispense with the deposit or bond if the insurer
makes a satisfactory showing that it has funds elsewhere sufficient to satisfy a judgment (Tex. Ins.
Code Ann. art 1.36, § 11(a)(1)(West Supp. 1994)); that the court may order "any postponement
necessary" to allow the defendant to meet the requirement (Id. at (b)); and that a motion to quash
or set aside service on the basis that the unauthorized person has not done any of the acts in the
article may be filed without bond (Id. at (c)).



Open Courts

 Appellants contend that the bond requirement violates their federal due process
rights because the bond is imposed without regard to ability to pay. As well, appellants contend
that the bond requirement violates the "Open Courts" provision of the Texas Constitution. Tex.
Cons. Ann. art I, § 19. Several recent cases have dealt with the "Open Courts" provision: 
R Communications v. Sharp, 37 Tex. Sup. Ct. J. 727-731 (April 28, 1994); Texas Ass'n of
Business v. Texas Air Control Board, 852 S.W.2d 440, 448-50 (Tex. 1993); and State v.
Flag--Redfern Oil Co., 852 S.W.2d 480, 484-86 (Tex. 1993). 

 The current cause differs procedurally from the above cases. Those cases dealt
with a requirement that an administrative penalty (Texas Association of Business) or a disputed
audit amount (Flag-Redfern, R Communications) be prepaid before any review by a court could
occur. This section of the Insurance Code, at least with regard to court proceedings, provides that
the court sets the amount of the bond, and gives the court a range of discretion as to how and
when the security must be posted. (9) We think the situation before us is comparable to an appeal
or supersedeas bond, and we do not read Texas Association of Business as abolishing appeal or
supersedeas bond requirements. See Maniccia v. Johnson & Gibbs, No. 3-92-614-CV (Tex.
App.--Austin February 2, 1994, writ requested). Rather, Texas Association of Business is a
restatement that under the open courts provision of the Texas constitution, a citizen's access to
the courts cannot be impeded by "unreasonable financial barriers" in light of the interest involved.
Id.

 In this case, the State traditionally has had a strong interest in protecting its
consumers from deceptive practices in the area of insurance. To support the amount of the bond,
the State points to provisions as to how many dollars per day per violation it might recover in the
underlying lawsuit based on appellants' engaging in the unauthorized businesses of insurance,
deceptive trade practice act violations, and article 21.21 Insurance Code violations. By
multiplying these amounts by the number of days of potential violations, the State contends that
the bond requirements are actually less than the State's potential recovery.

 Appellants' briefs do not identify any place in the record, and we have found none,
at which any of them produced evidence showing specifically that this requirement would, under
their particular financial circumstances, prevent them from litigating this cause in court. 
Assertions in a brief that the requirement would prevent them from being able to pursue this cause
are not adequate to show that their access to the courts would be unreasonably impeded under the
Texas Constitution or that they have been denied due process rights to trial under the United
States Constitution. 

 As noted above, appellants have been litigating this cause on temporary injunction. 
At this point, appellants have not demonstrated that they have been harmed by the imposition of
any unreasonable financial barriers to pursuing this litigation. We overrule points of error
NCAE--1 and NCAE-2 and all points adopting these points.

 We affirm the judgment of the trial court imposing the temporary injunction and
bond requirements.


Before Justices Powers, Aboussie and Jones

Affirmed

Filed: May 25, 1994

Do Not Publish

1. [1]  Appellants consist of two groups: National Council of Allied Employees, National Council
of Allied Employees Welfare Fund, National Council of Allied Employees Local Union 555,
National Benefit Services, Inc., Angelo Valente, and Gary Rickard ("NCAE" appellants); and
National Council of Allied Employees Local Union 615, National Council of Allied Employees
Local Union 615 Welfare Plan, National Council of Allied Employees Local Union 615 Welfare
Fund, United Labor Council Local Union 615, United Labor Council Local Union 615 Welfare
Plan, United Labor Council Local Union 615 Welfare Fund, Royal Guardian Mutual Benefit
Association, Inc., Intrepid Reinsurance Group, Ltd., International Association of Entrepreneurs
of America, Inc., Taylor & Associates, Inc., Corporate Benefit Administrators, Inc., American
Global Adjusting Company, Insurance Services Claims Administration, Carlton J. Kirel, Herbert
M. Marshall, Douglas Carpa, Jack L. Stevenson, Norman E. Meyer, James E. Taylor, and Joseph
N. Fiore ("Local-615" appellants). Not all defendants below are appellants. Each of the two
groups of appellants filed an appeal bond.
2. [2]  Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (1988).
3. [3]  Several briefs have been filed on behalf of various combinations of appellants. We will
consider all points of error as they relate to all appellants, as the briefs adopt various of each
other's points of error and arguments. This brief adopts as its argument in point of error two, the
arguments of the NCAE appellants with regard to the bond. A brief filed on behalf of the entire
group of Local-615 appellants adopts all points in the Entrepreneurs and NCAE briefs.
4. [4]  Lynn Martin v. Carlton Kirel, No. CIV 92-2075 PHX RCB (D. Ariz. Jan. 5, 1993).
5. [5]  An opinion was issued on remand of this cause to state court. State of Texas v. National
Council of Allied Employees, 791 F. Supp. 1154 (W.D. Tex. 1992). The opinion states that it
should not have any preclusive effect on the state court's consideration of the preemption defense
under ERISA. Id. at 1156 n.2. The opinion later contains the statement: "This ruling should not
be used in any way with the State's allegations against the various defendants, both individuals
and entities." Id. at 1161. This statement is rather puzzling. It is unclear whether the "ruling"
is the one remanding the cause, or the previous sentence, asking the Attorney General to contact
the appropriate federal offices to see if a federal action should be initiated. Inasmuch as no party
mentions the opinion, apparently the parties' interpretation has been that the opinion cannot be
cited or used.
6. [6]  The State argues that the point was waived because not raised as such in the NCAE brief,
which was filed first. The point is made explicitly in the Entrepreneurs' brief.
7. [7]  Appellants contended that they were a bona fide union and therefore qualified as an
employee organization. Although a union is a type of employee organization, the question
whether appellants were a union was disputed.
8. [8]  These points are contained in the brief filed by the NCAE appellants. The Entrepreneurs'
brief adopts the arguments and authorities of the NCAE appellants brief. A brief filed on behalf
of the entire group of Local-615 appellants adopts the NCAE and Entrepreneurs' briefs. 
9. [9]  We do not confront, and therefore make no holding on, the sections of the statute dealing
with bond requirements in proceedings before the Insurance Board.