Benny E. **CRISTANTIELLI** and Sandra Cristantielli, Plaintiffs,

v.

**KAISER FOUNDATION HEALTH PLAN OF TEXAS, et al.;** Defendants.

No. CIV. A. 4:99–CV–0516–P.

United States District Court, N.D. Texas, Fort Worth Division.

Aug. 1, 2000.

E.L. Atkins, Law Offices of E.L. Atkins, Arlington, TX, for plaintiffs.

John Anthony Scully, Cooper & Scully, Dallas, TX, M. Steve Nagle, Gwinn and Roby, Dallas, TX, for defendants.

## MEMORANDUM OPINION & ORDER

SOLIS, District Judge.

The Court now considers the following:

1. Plaintiffs' Motion to Remand, filed July 23, 1999; Defendant Kaiser Foundation Health Plan of Texas' Response, filed August 12, 1999; Plaintiffs' Reply, filed April 5, 2000;

2. Defendant's Motion to Strike Reply, filed April 13, 2000;

3. Defendant's Motion for Leave to File Sur–Reply, filed April 13, 2000;

4. Plaintiffs' Motion for Leave to File First Amended Motion to Remand, filed May 2, 2000; Defendant's Response, filed May 22, 2000;

5. Plaintiffs' Motion for Leave to File Affidavit, filed June 15, 2000.

For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Leave to File First Amended Motion to Remand. The Court DENIES Plaintiffs' Amended Motion to Remand; DENIES Defendant's Motion to Strike Reply; and DENIES Defendant's Motion for Leave to File Sur–Reply. Finally, the Court DENIES Plaintiffs' Motion for Leave to File Affidavit.

## I. Background

### A. Facts

On or about June 1, 1996, Benny and Sandra Cristantielli ("Plaintiffs" or "Cristantiellis") enrolled in a medical insurance plan with Kaiser Foundation Health Plan of Texas ("Defendant" or "Kaiser") serving as the health maintenance organization ("HMO"). In the spring of 1997, Mrs. Cristantielli requested Defendant's advice regarding appropriate testing and diagnostic procedures for the early detection of prostate cancer. Mr. Cristantielli was not knowingly suffering from any prostate disorder at the time of his wife's initial inquiry. Mrs. Cristantielli's inquiry seemed to have developed strictly as a means of screening and early detection of this disease. In response to Mrs. Cristantielli's inquiry, a physician with Kaiser allegedly told her, "Kaiser does not do that—PSA is not accurate." (Pl's Compl. at 4). Mr. Cristantielli turned fifty years old on August 31, 1997.

On December 4, 1997, Mr. Cristantielli contacted Defendant to report back pain. (*See* Pl's Compl. at 4). He requested a PSA because he knew that back pain could indicate a possible prostate problem. Muhammed A. Khan, M.D., a physician employed by Defendant, examined Mr. Cristantielli and reported a normal lumbar spine. He did not, however, perform either a PSA or a digital rectal examination. In April 1998, a Kaiser physician finally ordered a PSA test. (Pl's Compl. at 5). The initial PSA test, as confirmed by a second test, indicated prostate cancer. X-ray reports revealed "diffuse osseous metastases," meaning that the cancer had spread from Mr. Cristantielli's prostate. (*Id.*) Mr. Cristantielli alleges he will probably not survive the spreading cancer. (*Id.*)

The Cristantiellis now sue Dr. Mark Capistrano for negligence in failing to provide timely and proper medical care to Mr. Cristantielli.[1] Furthermore, the Cristantiellis seek to recover from Defendant for negligence as an HMO in handling and providing medical care, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code and the Texas DTPA, and breach of contract all in connection with the HMO's failure to perform the PSA test when Ms. Cristantielli first requested it and again when Mr. Cristantielli turned fifty.[2] Kaiser filed a notice of removal on June 25, 1999. Kaiser alleges this court has original jurisdiction over this action because one or all of the Cristantiellis' claims arise under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001, *et seq.* (1999). As such, Defendant alleges ERISA preempts and displaces Plaintiffs' claims and provides this Court with subject matter jurisdiction. The Cristantiellis filed a Motion to Remand on July 23, 1999, and Motion for Leave to File Plaintiffs' First Amended Motion to Remand on May 2, 2000.

### B. Preliminary Orders

The Cristantiellis' original Motion to Remand rested in whole upon the argument that the claims were too tenuous to "relate to" the ERISA plan. Months after filing the original Motion to Remand, Plaintiffs filed a Reply to that motion, which added an argument challenging ERISA's application to the Cristantiellis' health plan. Specifically, they raised the new argument that the health plan at issue fell beyond the statutory definition of employee benefit plan. Therefore, the Cristantiellis sought remand due to this Court's lack of subject matter jurisdiction over the claims. Kaiser filed a motion to strike the Reply as

---

**1.** The Plaintiffs' pleadings and briefing offer very little information about Dr. Capistrano's role in Mr. Cristantielli's treatment. It appears that he worked for Permanente Medical Association of Texas d/b/a Kaiser Permanente, but it is unclear whether he ever served as Mr. Cristantielli's treating physician.

**2.** The Cristantiellis allege several other causes of action against Kaiser, including restraint of trade, fraud, and civil conspiracy.

untimely and requested, in the alternative, the opportunity to file a sur-response addressing Plaintiffs' new arguments. Later, Plaintiffs filed the Motion for Leave to File Plaintiffs' First Amended Motion to Remand, which addressed both arguments for remand. Kaiser filed a Response to the Motion for Leave that addressed the Plaintiffs' new argument.

A motion to remand based upon lack of subject matter jurisdiction may be made at any time prior to final judgment. *See* 28 U.S.C. § 1447(c). Plaintiffs' most recent challenge to the applicability of ERISA directly attacks this Court's subject matter jurisdiction. Accordingly, Plaintiffs' new arguments should be considered before determining the propriety of Kaiser's removal. Kaiser's Motion to Strike Plaintiffs' Reply is DENIED. As requested in Kaiser's Motion to Strike, Kaiser should be afforded the opportunity to address Plaintiffs' additional argument. While ordinarily this might require an extension of time or leave to file a sur-reply, Kaiser presented a thorough opposition to Plaintiffs' argument in its Response to Plaintiffs' Motion for Leave. Several transfers of this case have delayed the resolution of these motions and issues. Because both sides have presented adequate briefing on the issue, the Court will not create any further delay by allowing additional briefing. For these reasons, the Court DENIES Kaiser's Motion for Leave to File a Sur–Reply and GRANTS Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Motion to Remand.

## II. Standard for Removal

■ Removal of a state law action to federal court is proper when the complaint falls within the original jurisdiction of the federal district court. *See* 28 U.S.C. § 1331. Where, as here, there is no diversity of citizenship between the parties, the propriety of removal depends upon the existence of a federal question, i.e., whether any of plaintiffs' claims "arise under" federal law. *See* 28 U.S.C. § 1331. An action arises under federal law when the face of the "well pleaded complaint" raises a federal issue. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The well-pleaded complaint rule is qualified, however, by the complete preemption doctrine. As the Supreme Court stated in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." The Supreme Court ruled that ERISA is such an area, and that state law claims are preempted by ERISA provided that they "relate to" an ERISA plan. *Id.*

Defendant Kaiser removed this action alleging ERISA preempts the Cristantiellis' various state law claims, thereby conferring this court with original jurisdiction over the action. The Cristantiellis raise two separate arguments in their motions to remand for improper removal: (1) the health plan at issue is not subject to ERISA; and (2) the claims do not "relate to" an ERISA plan so as to invoke the doctrine of complete preemption. The court will address each of these arguments in turn.

## III. Classification of the Plan

### A. The Family Business

Mr. Cristantielli is the sole shareholder of his individually formed Texas Corporation, CIC, Inc. Individually and through this wholly-owned corporation, Mr. Cristantielli owns, operates, and manages a restaurant in Fort Worth, Texas, on which Mr. Cristantielli holds a franchise agreement with International House of Pancakes ("IHOP"). The name of Mr. Cristantielli's restaurant is "IHOP # 1318."

In May 1996, Mr. Cristantielli applied for a group health insurance plan from Kaiser. Mr. Cristantielli offered this health insurance plan to all of his full-time

employees. As discussed more fully *infra*, it appears that the full-time employees consisted of Mr. Cristantielli and his wife Sandra, their twenty-four-year-old son, Benny Jr., and their twenty-six-year-old daughter, Erika. No other employees of CIC, Inc. were offered the insurance coverage. Therefore, the group plan covered only the immediate family of Mr. Cristantielli.

Mr. Cristantielli now argues that these policies are individual health insurance plans purchased for his family from personal funds and do not meet ERISA's statutory definition of an employee benefit plan. Kaiser argues that regardless of the particular individuals covered by the plan, Mr. Cristantielli purchased and organized it through CIC, Inc., which employed all of the individuals covered. Kaiser therefore contends the plan falls squarely within the definition of an employee benefit plan.

### B. Employee Benefit Plan as Defined by ERISA

ERISA applies only to employee benefit plans as defined by the statute. *See* 29 U.S.C. § 1003(a) (1999). The statute defines an "employee benefit plan" as "any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . ." certain hospital or medical benefits. 29 U.S.C. § 1002(1) (1999). The Fifth Circuit has established a test for determining whether a particular plan qualifies as an "employee welfare benefit plan." *See Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993). Courts must analyze the plan in question and determine

> whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—estab-

lished or maintained by an employer intending to benefit employees. If any part of the inquiry is answered in the negative, the submission is not an ERISA plan.

*Id.*

■ The parties' sole point of contention goes to the third prong of this test. There are two primary elements of an employee benefit plan: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees. *See Meredith,* 980 F.2d at 355. Mr. Cristantielli concedes that he is an employer and that he maintained this plan.[3] (*See* Br. in Support of First Am. Mot. to Remand at 6–7) (stating he employs some full time employees through his business CIC, Inc., and that he purchased the plan and offered it to those full-time employees). He contests, however, that the plan intended to provide benefits to employees rather than just his family members. The Court must determine whether the existence of a family relationship among all members of the plan prevents the plan from falling within ERISA.

■ The Department of Labor retains the authority to promulgate binding regulations regarding ERISA. *See Meredith v. Time Ins. Co.,* 980 F.2d 352, 356–58 (5th Cir.1993). In an exercise of this power, the Secretary of Labor issued a regulation explicitly withdrawing ERISA's application to situations in which the health plan at issue covers only the owner of a wholly-owned business and the owner's spouse. Specifically, the regulation states: "an individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse." 29 C.F.R. § 2510.3–3 (1992). The regulations also require that a

---

**3.** Mr. Cristantielli spends a lot of time challenging Kaiser's allegation that IHOP employed Mr. Cristantielli and maintained the plan. (Br. in Support First Am. Mot. to Re-

mand at 6). For the purpose of this motion, the Court assumes the truth of Mr. Cristantielli's statements that IHOP neither employed him nor provided the Kaiser medical plan.

plan involve at least one employee. *See* 29 C.F.R. § 2510.3–3(c)(1). Therefore, in applying these regulations, if the only two people covered by the plan are the owner and spouse, then the plan does not provide coverage to any employees, and the plan falls beyond the reach of ERISA. *See Meredith*, 980 F.2d at 358. Mr. Cristantielli seems to argue that this exception also prevents his health plan from being classified as an ERISA plan. His argument fails.

Mr. Cristantielli continually argues that ERISA only applies to plans where the employee and employer are two separate entities.[4] He cites *Meredith* for the proposition that he and his wife cannot be considered employees under the plan because he is the sole owner of CIC, Inc., the issuing corporation. In *Meredith*, the plaintiff was the sole owner of a small company called Strawberry Fruit Basket Co., which employed herself and ostensibly her husband. *See* 980 F.2d at 353. As owner, she eventually enrolled in a small business insurance benefit program. Although the policy allowed for any new employees to enroll in the plan within 90 days, there were no such employees so that only she and her husband were covered by the plan. *Id.* In holding that ERISA did not control the plan, the Fifth Circuit cited statutory definitions that require the employer and employee to be separate entities, recognizing that "the employer-employee relationship is predicated on the relationship between two different people." *Id.* at 358.

Mr. Cristantielli is correct that under *Meredith*, he and his wife are not considered employees for the purpose of determining whether the plan benefitted employees. Unfortunately for Mr. Cristantielli, however, *Meredith* is distinct from his case in one very significant way. In *Meredith*, the only employees of the business were the owner and her husband, whereas in the current situation, the health plan covers employees of CIC Inc. other than Mr. and Mrs. Cristantielli.[5]

■ The Fifth Circuit recently confirmed and clarified the position that an employer's "status as a co-owner does not automatically foreclose ERISA coverage." *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 294 (5th Cir.1999).[6] In *Vega*, the Court classified a health benefit package as an ERISA plan where the plan did not solely cover the co-owners, but also covered at least one other person. "As long as a Texas business corporation maintains a plan and at least one employee participant (other than a shareholder or a spouse of the shareholder), an employee shareholder and his beneficiaries may be participants in the plan with standing to bring claims under ERISA." *Id.* at 294. The Court theorized that the owner and spousal exclusion of 29 C.F.R. § 2510.3–3 "simply ensures that owners are not counted as employees to satisfy the 'employee' requirement." *Id.* Once the plan is found to cover employees other than the owner and spouse, then the plan may be properly labeled an employee benefit plan for both the employee and the owner alike. *Id.*

---

4. *See Meredith*, 980 F.2d at 357 ("These regulations clearly prevent Meredith from being simultaneously an employer and an employee. Her act of purchasing insurance for herself and her husband, although done under the color of her commercial status, did not create an employee welfare benefit plan.").

5. "Under the controlling definition, Meredith is not an employer because she has no employees and plans without employees are, by definition, not regulated by ERISA." *Meredith*, 980 F.2d at 358.

6. The Cristantiellis argue *Vega* is irrelevant to the case at hand because it dealt with determining whether the beneficiary of the owner of a plan had standing to sue under ERISA. (*See* Pls' Mot. for Leave to File Affidavit at 6 n. 4). While Plaintiffs accurately recite one of the issues presented in *Vega*, the Fifth Circuit's analysis of the Department of Labor regulations is both relevant and probative to the issue before this court.

Therefore, the Court may abide by *Meredith* by not considering Mr. and Mrs. Cristantielli as employees and still find the plan an employee benefit plan if other employees enjoyed participation. *Id.* at 294 n. 6 (noting the consistency between *Meredith* and *Vega* because in *Vega* the plan covered at least one other such employee).

Throughout his brief, Mr. Cristantielli references the fact that the plan was offered to CIC, Inc.'s full-time employees, but none of them joined. (*See* Pls' First Am. Motion to Remand at 6; Affidavit of Benny Cristantielli at 2). The evidence belies this statement. The original application for group benefits indicates CIC, Inc. employed thirteen individuals, of whom four were considered "eligible employees" and nine were "ineligible" because of their "part-time & seasonal" status. (Pls' First Am. Mot. to Remand, Group Enrollment Information Sheet, Exh. B at 2). The form indicates four employees submitted applications and no employees submitted declinations. This enrollment form undermines Mr. Cristantielli's statement that none of his full-time employees enrolled in the plan. All of the evidence leads this Court to find that Mr. Cristantielli's family members were the only "full-time" or eligible employees and that all of them participated in this plan. (*See also* Pls' First Am. Mot. to Remand, Notes of Faherty, Exh. B at 5 ("All eligibles are enrolled—the remainding [sic] employees of this restaurant are all part-time or seasonal.")).

Two of the applications for the group health plan belonged to Mr. and Mrs. Cristantielli. As stated above, Department of Labor regulations prevent either of these individuals from being considered employees for purposes of determining the status of the plan. However, the regulations promulgated by the Secretary of Labor do not prohibit the Court from considering an adult child of the owner who is also a full-time employee of the business. The other two applications submitted in connection with the Group Enrollment form belong to Benny Jr. and Erika. (*See* Pls' First Am. Mot. to Remand, Exh. B at 9, 10). Although they are both children of the owner, Mr. Cristantielli, they are not dependents and are adult employees of CIC, Inc. (*See* Pls' First Am. Mot. to Remand, Wage and Tax Forms, Exh. B at 6, 7). Therefore, the Court considers both Benny Jr. and Erika employees for the purpose of determining whether an employee benefit plan exists.

Mr. Cristantielli argues that he intended to benefit his family rather than his employees. Upon reviewing the documents, the Court finds Mr. Cristantielli intended to benefit his family as employees of CIC Inc. rather than as his children. All of the documentation refers to and focuses on each applicant's status as an employee of CIC, Inc. The original Group Enrollment Information Form contains several statements referring to employee status of the various policy holders.[7] Other correspondence between Mr. Cristantielli and Kaiser demonstrate the understanding that the policy covered the employees of CIC Inc. rather than Mr. Cristantielli's family. While Mr. Cristantielli may not have intended to benefit all of his employees, he certainly relied upon the employee status of his family members to provide them benefits. Based upon the evidence, the court finds the plan in question covered employees other than Mr. and Mrs. Cristantielli, and that Mr. Cristantielli intended to benefit his employees through this health benefit plan. Therefore, the Court

---

7. The enrollment form includes statements such as, "Do all Employees live in the Kaiser Permanente service area?"; "The Employer understands and agrees to the following"; "The Employer, while not an agent of KFHP, will be responsible for collection of premiums from Employees, will notify Employees of the termination of their coverages, and will forward to Employees notices and/or amendments sent by KFHP to Employer"; "The Employer will contribute a minimum of 75% of each participating Employee's premium cost." (*See* Pls' First Am. Mot. to Remand, Exh. B at 2–3).

DENIES Plaintiffs' Motion to Remand on the basis that the plan is not an "employee benefit plan" as defined by ERISA.

## IV. ERISA Preemption

### A. Standards for ERISA Preemption

ERISA's provisions "supersede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a) (1999). ERISA preemption is to be construed as "deliberately expansive;" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), however, its boundaries are not limitless. *See Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 821 (5th Cir.1994). Even under the broad reading "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1329 (5th Cir.1992) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). *See also Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir.1996). "ERISA does not preempt state laws that have 'only an indirect economic effect on the relative costs of various health insurance packages' available to ERISA-qualified plans." *CIGNA Healthplan of Louisiana, Inc. v. State of Louisiana*, 82 F.3d 642, 647 (5th Cir.1996) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 662, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

■ The Fifth Circuit has established a two-part test for determining whether a state law affects an employee plan in too tenuous, remote, or peripheral a manner to come within the doctrine of complete preemption. A claim based on state law is more likely to relate to an ERISA plan if (1) it falls within an area of exclusive federal concern; and (2) it directly affects the relationship between the principle entities: the employer, the plan, the fiduciaries, and the participants and beneficiaries. *See Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir.1994); *Sommers Drug Stores v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1467 (5th Cir.1986). When applying this test, the court must evaluate congressional intent and the relations between the principal ERISA entities. *Memorial Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245–50 (5th Cir.1990).

Congress enacted ERISA in order to promote the welfare of employees and their beneficiaries by protecting their contractually defined benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). ERISA's civil enforcement provision provides for the recovery of benefits due under the terms of the plan, enforcement of rights under the terms of the plan, or clarification of rights to future benefits under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B) (1999). Therefore, under the first prong of the Hook/Sommers test, "ERISA will more likely preempt claims by participants or their beneficiaries that allege they were denied their contractual benefits as defined by the terms of the plan." *Blum v. Harris Methodist Health Plan, Inc.*, 1997 WL 452750, at *2 (N.D.Tex. July 31, 1997) (Solis, J.).

The Supreme Court has identified two types of civil actions that may be brought against ERISA plans and their principal entities: enforcement actions brought to secure specified relief, and "lawsuits against ERISA plans for run-of-the-mill state law claims, e.g. unpaid rent, failure to pay creditor, or even torts committed by an ERISA plan." *Memorial Hospital*, 904 F.2d at 248 (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 n. 8, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). "[A]lthough obviously affecting and involving ERISA plans and their trustees, this second type is not preempted." *Id.* Therefore, when evaluating the second prong of the Hook/Sommers test, "the question is not whether the state claims nominally affect relations between parties who happen to be principle entities,

but whether the state claim affects the duties of principle entities which arose out of the terms of [the] benefit plan." *Blum*, 1997 WL 452750, at \*2.

These principles require an evaluation of the Cristantiellis' claims against Kaiser. If any one of the claims is preempted, then removal of the entire complaint is proper, regardless of whether the district court might have had original jurisdiction over the remaining claims. *See* 28 U.S.C. § 1441(c); *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841.

### B. Plaintiffs' Texas State Law Claims are Preempted

Plaintiffs argue that because their claims are medical malpractice claims premised upon the quality of healthcare received by Mr. Cristantielli, ERISA does not preempt their claims against Kaiser. Several courts have recently addressed other attempts to hold HMOs directly liable for the malpractice of their listed physicians and have generally allowed the cases to proceed. *See e.g., Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir.1996); *Lancaster v. Kaiser Foundation Health Plan*, 958 F.Supp. 1137 (E.D.Va.1997); *Phommyvong v. Muniz*, No. CIV.A.98–0070–L, 1999 WL 155714 (N.D.Tex. Mar.11, 1999) (Lindsay, J.); *Blum v. Harris Methodist Health Plan, Inc.*, No. CIV.A.97–0374–P, 1997 WL 452750 (N.D.Tex. July 31, 1997) (Solis, J.). Taken as a whole, however, these case have identified a fine line between those claims based upon the quality of the benefits received under the health plan and those claims based upon the quantity of the benefits provided.

Although ERISA preemption is fairly expansive, several courts have limited preemption in those cases where plaintiffs seek to hold HMOs liable for a doctor's actions. In *Blum*, this court determined ERISA did not preempt the plaintiff's claims for medical malpractice. 1997 WL 452750, at \*3. Mr. Blum brought claims against his HMO after his primary physician misread an x-ray and diagnosed Mr. Blum's cancer as a calcium deposit. The court determined that medical malpractice claims relating solely to the quality of the care received do not present claims under federal law. *Id.* A later Northern District case expounded upon that same principle. In *Phommyvong*, a twelve-year-old girl died after a treating nurse practitioner failed to timely diagnose the young girl's lupus. 1999 WL 155714, at \*1. As explained by the court, ERISA preemption did not apply because the claims "[we]re not based upon any mishandling or denial of claims under the health benefit plan, but rather [we]re based upon the quality of care which their daughter received." *Phommyvong*, 1999 WL 155714, \*2. In both of these cases, the patient received the benefit and therefore were not bringing any action for the mishandling of their claim. Rather, the plaintiffs were suing for the inadequacy of the actual services that they did receive.

Both of these cases distinguished the facts at hand from those presented in *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (5th Cir.1992), where the Fifth Circuit found ERISA preempted the plaintiff's malpractice claims. Mrs. Corcoran began having difficulties with her pregnancy. Her doctor recommended hospitalization for constant supervision of the fetus. The doctor's recommendation underwent a utilization review, which determined hospitalization was not necessary. *Id.* at 1324. As a result of this cost-containment review, United instead approved 10 hours a day home nursing care. While Mrs. Corcoran was at home without care, her unborn child went into distress and died. The Corcorans then brought a malpractice action against United, arguing that malpractice classifies as a state law of general application which does not relate to the ERISA plan within the meaning of complete preemption. *Id.* at 1325. The Fifth Circuit considered the Corcorans' claims and the nature of United's actions. Ultimately, the Court decided that United

gave medical advice, but only in the context of determining the availability of benefits under the plan. *Id.* at 1331. ERISA preempted the Corcorans' negligence claims to the extent that those claims were based upon the plan's cost-containment procedures. *Id.* In finding these claims preempted, the Fifth Circuit distinguished the Corcorans' claims from true medical malpractice claims that challenge decisions made by a doctor in the course of treatment. *Id.* at 1333 n. 16 (distinguishing *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983 (E.D.Pa.1990), where the plaintiff brought a malpractice action against an HMO based upon agency principles for the negligent medical care provided by the doctor in a manner completely unrelated to the denial of benefits or a cost-containment policy).

The distinction drawn in *Corcoran* has been made by at least one other court in *Lancaster v. Kaiser Foundation Health Plan,* 958 F.Supp. 1137 (E.D.Va.1997). In *Lancaster,* the treating physician failed to diagnose a young girl's brain cancer despite having treated her illness for over four years. The court evaluated all of the plaintiffs' claims, and held that ERISA preempted neither the malpractice claims brought against the doctor nor the malpractice claims brought against the HMO under a theory of vicarious liability. *Id.* at 1146 (emphasizing the claims' focus on the medical decisions and quality of care rather than the administrative services or quantity of services due under the plan). However, the plaintiffs' claims for direct negligence and fraud on the part of the HMO attacked administrative decisions rather than medical ones. "Properly construed, these claims focus on Kaiser's administrative decisions to curb rising health care costs by employing a system of financial incentives that rewarded physicians for not ordering tests or treatments." *Id.* at 1147. In other words, those claims brought directly against the HMO challenged the denial of benefits and were preempted by ERISA. *Compare Kuhl v. Lincoln Nat'l Health Plan of Kansas City,*

*Inc.,* 999 F.2d 298, 302 (8th Cir.1993) (affirming district court's ruling that ERISA preempted plaintiffs' medical malpractice claims against decedent's HMO because defendant's decision to delay pre-certification of heart surgery "cannot be stretched to imply that [defendant] went beyond the administration of benefits and undertook to provide [decedent] with medial advice."), *and Jass v. Prudential Health Care Plan Inc.,* 88 F.3d 1482 (7th Cir.1996) (finding that the complete preemption doctrine applied to plaintiff's negligence claim against the pre-certification review administrator who had denied her request for physical therapy to rehabilitate her knee subsequent to surgery), *with Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350 (3rd Cir. 1995) (finding ERISA did not preempt plaintiffs' claims for injuries resulting from the medical malpractice of doctors and laboratories in a manner completely unrelated to the denial of benefits).

The Cristantiellis' Motion to Remand tries to characterize their action as claims based solely upon medical malpractice. Plaintiffs attempt to distinguish this action from an enforcement action by focusing on the quality of care received. In doing so, they state that they do not seek to recover the related benefits or reimbursement for medical care that has been received. The Cristantiellis claim that "[e]ach and every claim is based, essentially, upon the failure to provide timely and proper diagnosis of prostate cancer, considering the presenting clinical picture of the patient and the promises made." (Pls' Br. in Support of First Am. Mot. to Rem. at 13). In fact, their complaint explicitly states, *"No claim is made for payment of benefits."* (Pl's Original Complaint at 7) (emphasis in original).

As discussed *supra,* Plaintiffs are masters of their pleadings. However, Plaintiffs cannot avoid complete preemption through artful pleading. *See Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir.2000) (stating complete preemption is jurisdic-

tional in nature and cannot be avoided through plaintiff's artful pleading in state law terms). Rather, if their complaint is "really" based upon ERISA, then this Court must look beyond the terms of the complaint and find preemption. In other words, if the Cristantiellis' claims are best recharacterized as a section 502(a)(1)(B) claim to recover benefits under the terms of the plan, then ERISA completely preempts those claims. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th Cir.1996). After reviewing the complaint, some of the Cristantiellis' true claims against Kaiser more closely resemble those made in *Corcoran* than those presented in the other cases discussed above. The negligence claim charges Kaiser with:

a. failing to provide timely and/or proper physical examination and diagnostic testing consultation;

b. failing to authorize timely and/or proper physical examination and diagnostic testing consultation;

c. failing to provide, authorize or make available to BENNY E. CRISTANTIELLI on or after May 1, 1997, appropriate diagnostic testing and examination; ...

e. failing to comply with the terms and provisions of THE KAISER PERMANENTE MEDICAL CARE PROGRAM.

The Cristantiellis also bring claims for Kaiser's alleged failure to fulfill its promise to provide appropriate and timely medical care by failing and refusing to provide

represented and promised services "so that KAISER ... would make more money and doctors hired by KAISER ... would make more money." [8] (Pl's Original Complaint at 7). Plaintiffs further allege that "Kaiser ... failed to process BENNY E. CRISTANTIELLI's need for appropriate diagnostic tests and physical examination in good faith, and breached their duty of good faith and fair dealing in failing to provide and authorize timely and proper medical care." (Pl's Original Complaint at 8).

Plaintiffs' claims have nothing to do with a doctor's actions and everything to do with Kaiser's failure to provide the PSA test Mr. Cristantielli so desperately wanted. The Cristantiellis' claims criticize an alleged cost-containment incentive system that seems to discourage doctors from ordering tests. Unlike the plaintiffs in *Dukes* who did not allege that the "welfare plans in any way withheld some quantum of benefits due," the Cristantiellis' complaint centers around Kaiser's failure to order and approve a PSA test upon Mrs. Cristantielli's request and then again upon Mr. Cristantielli's fiftieth birthday. As recently stated by another district court in Texas, "[c]laims challenging the quality of benefits, as in *Dukes*, are not preempted by ERISA. Claims based upon a failure to treat where the failure was the result of a determination that the requested treatment wasn't covered by the plan, however, are preempted by ERISA." *Corporate Health Ins. Inc. v. Texas Dep't of Ins.*, 12 F.Supp.2d 597, 620 (S.D.Tex.1998). As

---

**8.** The Cristantiellis further allege that:

i. KAISER ... through its publications, acted fraudulently and deceptively, by causing the member or prospective member to believe that the decision to grant or deny immediate medical care to one, such as BENNY E. CRISTANTIELLI, was an independent, physician or nursing decision and based upon physician or nursing standards when, in fact, the decision was based upon how much more money the physician or nurse would receive, if minimal medical care were authorized and provided to the members;

j. KAISER ... did not tell and concealed from BENNY E. CRISTANTIELLI that KAISER ... agreed to pay CAPISTRANO and P–MAT more money if they refused to authorize BENNY E. CRISTANTIELLI the physical examinations requested.

(Pls' Complaint at 8). As in *Lancaster*, "the gravamen of these claims is that Kaiser purposefully established and implemented an administrative policy that had the effect of inducing [doctors] to deny benefits to [plaintiff], thereby causing [the] injuries." 958 F.Supp. at 1146.

such, portions of Plaintiffs' claims against Kaiser for negligence are appropriately re-characterized as claims for benefits and therefore fall within the complete preemption of ERISA.

██ Moreover, Plaintiffs also brought claims under the Texas Insurance Code[9] and the Texas Deceptive Trade Practices Act[10] that have consistently been found preempted by ERISA. These claims allege that Kaiser committed fraud by promising to provide medical care and physical exams and then failing to do so, failing and refusing to provide represented and promised services so that Kaiser would make more money, by "causing the member ... to believe that the decision to grant or deny proper and timely medical care ... was an independent, physician or nursing decision ...." Claims premised on Texas state law tort theories under Article 21.21, such as those asserted by Plaintiff, are preempted by ERISA and are not salvaged by the Act's savings clause. *See, e.g. Hogan v. Kraft Foods,* 969 F.2d 142, 144–45 (5th Cir.1992); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 979 (5th Cir.1991); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir. 1990); *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 763–64 (5th Cir.1989). Likewise, the Fifth Circuit has held that Plaintiff's claim under the Texas DTPA is preempted under ERISA. *See, e.g. Ramirez,* 890 F.2d at 764; *Boren v. N.L. Indus., Inc.,* 889 F.2d 1463, 1464 (5th Cir. 1989), *cert. denied* 497 U.S. 1029, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990).

Perhaps the most blatant claim for denial of benefits that must fall squarely within ERISA's complete preemption appears under the label "Restraint of Trade." (Pls' Complaint at 18). Plaintiffs allege Kaiser "failed to allow [Mr. Cristantielli] to have timely and proper physical examinations and testing for prostate cancer, delaying and preventing him from receiving timely and proper medical care and treatment so they could make more money." *Id.* The only manner in which Kaiser could have refused Mr. Cristantielli timely and proper physical exams would have been through a denial of benefits. Therefore, this claim fails directly within the claims completely preempted by ERISA.

## CONCLUSION

At this time, the Court does not need to determine whether ERISA preempts each and every claim against Kaiser. For now it is enough to determine that the plan at issue is an employee benefit plan as defined by ERISA and at least some of the negligence, fraud, and restraint of trade claims fall within the complete preemption of ERISA § 502 to the extent that those claims are actually based upon the denial of benefits. Therefore, these claims arise under federal law within the meaning of 28 U.S.C. § 1331. Accordingly, Defendant's removal was proper. The Court hereby DENIES Plaintiffs' Motion to Remand and Plaintiffs' First Amended Motion to Remand.

---

**9.** Tex. Ins.Code art. 20A, *et seq.* (Vernon 1981 & Supp.2000).

**10.** Tex. Bus. & Com.Code § 17.45, *et seq.* (Vernon 1987 & Supp.2000).