United States Court of Appeals,

Fifth Circuit.

No. 92-2300.

Summary Calendar.

JeNeal MEREDITH, Plaintiff-Appellant,

v.

TIME INSURANCE COMPANY, Defendant-Appellee.

Jan. 6, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, JOLLY and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

JeNeal Meredith appeals the summary judgment dismissal of her Texas common-law and statutory claims against her insurance carrier, Time Insurance Company. Finding her claims to be beyond the preemptive scope of the Employee Retirement Income Security Act ("ERISA"), we vacate and remand.

Background

Meredith is the owner of a business known as the "Strawberry Fruit Basket Co.," a small flower and fruit basket company in Pasadena, Texas which she organized as a sole proprietorship, employing herself and, ostensibly, her husband. In April of 1987 she applied for participation in the Multiple Employer Trust Signature II, an insurance benefit program offered by the Time Insurance Company. She submitted the application in her capacity as owner. The application requested life, accidental death and dismemberment, and medical coverage for herself and her husband and, although the policy allowed coverage for any new employee who so chose after 90 days of employment, there were then none, and none were hired thereafter.

In response to a question on the application form, Meredith reported that she had never experienced "any indication, diagnosis, or treatment for heart disorder, stroke, or hypertension." When Meredith incurred medical bills totaling approximately $7,000 as a result of an operation to

remove kidney stones, Time requested and was given access to her medical records. According to Time, those records disclose a series of heart and hypertension-related complaints dating back to 1983. Meredith argued without avail that Time had no basis for denying coverage.

Meredith responded to Time's rejection by filing suit in Texas state court, advancing common-law contract and tort theories as well as statutory claims under the Texas Insurance Code and the Deceptive Trade Practices—Consumer Protection Act, seeking compensatory and punitive damages. Time removed the case to federal court and sought summary judgment on an ERISA preemption theory. The district court granted the motion and entered a summary judgment. Meredith timely appealed.

Analysis

The issue presented by this appeal is whether an insurance plan purchased by a sole proprietor, covering only herself and her spouse, constitutes an "employee welfare benefit plan" as that term is defined in ERISA. If it is, the parties agree that state common-law, DTPA and bad-faith-insurance-practice claims would fall within the broad preemptive scope of ERISA.[1] The inquiry requires our review of the definition of "employee welfare benefit" plans. Whether a particular plan falls within the statutory definition is a question of fact.[2] We therefore scour the summary judgment record to determine whether a genuine issue of material fact exists with respect to the nature of the plan.

Time offers insurance through what has come to be known as a Multiple Employer Trust or, in ERISA terms, a Multiple Employer Welfare Arrangement ("MEWA"); the MEWA allows smaller

---

[1]For a discussion of the scope of ERISA preemption especially as applied to Meredith's claims see Bishop & Denney, *Hello ERISA Good-Bye Bad Faith: Federal Pre-emption of DTPA, Insurance Code, and Common Law Bad Faith Claims,* 41 Baylor L.Rev. 267 (1989).

Because we determine that the plan in question is not an employee benefit plan we need not consider whether Meredith's claims "relate to" an employee benefit plan so as to fall within the preemptive scope of ERISA by their nature. 29 U.S.C. § 1144(a).

[2]*Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449 (5th Cir.1991) (citing *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.), *cert. denied,* --- U.S. ----, 111 S.Ct. 581, 112 S.Ct. 586 (1990)).

employers to receive insurance benefits at group rates.[3]  Time argues that the MET Signature II is itself an ERISA plan, regardless of the Strawberry Fruit Basket's role, because it existed before Meredith's application and because it would otherwise have qualified as an ERISA plan.[4]  While the definition of MEWA includes arrangements whereby self-employed persons are participants, the existence of a MEWA, or of other participants, is not dispositive of preemptive status.

Time's argument is flawed because it brushes aside the essence of ERISA preemption and focuses instead on the existence of a MEWA.  The preemptive force of ERISA flows from 29 U.S.C. § 1144(a) which provides that "the provisions of this title ... shall supersede any and all state laws insofar as they relate to employee benefit plans."  As this and other courts have underscored, not all MEWAs are employee benefit plans.[5]

Time seizes on the definition of MEWA, giving scant weight to the fact that ERISA preemption is based on the existence *vel non* of an employee benefit plan, and that an employee benefit plan necessarily must center on the existence of an employer and an employee.[6]  In so doing, Time overlooks the fact that a MEWA is not the entity to which ERISA directs its primary

---

[3]The term MEWA includes all arrangements "established or maintained for the purpose of offering or providing" certain benefits "to the employees of two or more employers ... or to their beneficiaries."  29 U.S.C. § 1002(40)(A).

[4]"The courts, congressional committees, and the Secretary uniformly have held that [multiple employer trusts]" are not themselves employee benefit plans.  *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982) (en banc) (adopted in *Memorial Hospital Sys. v. Northbrook Life Ins.,* 904 F.2d 236 (5th Cir.1990)).

[5]*MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992).  "ERISA does not automatically govern all MEWAs.  Congress's notion of a MEWA is broader than its concept of an "employee benefit plan"....  The statutory definition of a MEWA encompasses both EWBPs and arrangements "other than ... employee welfare benefit plan[s].' "  *Id.* at 181 (quoting 29 U.S.C. § 1002(40)(A)).  *See also e.g., Donovan,* 688 F.2d at 1371;  *Eddy v. John Alden Life Ins. Co.,* No. 90-C-01736, 1991 WL 44289 (N.D.Ill.1991);  *Bell v. Employee Security Benefit Assoc.,* 437 F.Supp. 382 (D.Kan.1977).

[6]*MDPhysicians & Assoc.;  Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208 (5th Cir.)  In ERISA Congress did not intend to regulate the simple insurer/insured relationships standing alone), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1980).  Of course, ERISA may otherwise affect a MEWA.  *See, e.g., Donovan,* 688 F.2d at 1372 N. 4.

preemptive attention.[7]   Indeed, ERISA only applies to plans "established or maintained by an employer or employee organization" engaged in interstate commerce.[8]   The question simply is not whether the Signature II Multiple Employer Trust is a MEWA, but whether Meredith's purchase of insurance from it constituted the establishment or maintenance of an employee benefit plan.

We are not here concerned with whether the "entity that established and maintained the plan intended ERISA to govern the MEWA."   For our guidon we note that "ERISA protection and coverage turns on whether the [plan] satisfies the statutory definition."[9]

The ERISA definition of an employee benefit plan seems clear enough;  "The term "employee benefit plan' or "plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both ...;"[10]   the more narrow term "employee welfare benefit plan" is, in turn,

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident or disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship, or prepaid legal services....[11]

The plan in question deals with a subject matter—life and health insurance—which fits comfortably within the customary meaning of employee welfare benefit plan.  But whether the plan is an ERISA plan requires a more probing inquiry.

We have devised a comprehensive test for determining whether a particular plan qualifies as

---

[7]*Donovan,* 688 F.2d at 1372 (citing cases);  *Eddy v. John Alden Life Ins. Co.,* No. 90-C-01736, 1991 WL 44289 (N.D.Ill.1991);  *Clark v. Golden Rule Ins. Co.,* 737 F.Supp. 376 (W.D.La.1989).  In fact, in the same section in which Congress preempts state laws relating to employee benefit plans, it expressly allows state insurance regulation of employee benefit plans which are also MEWAs.  29 U.S.C. § 1144(b)(6).

[8]29 U.S.C. § 1003(a).  The parties have not questioned the shop's involvement in interstate commerce and though we recognize that similar cases have found an insufficient nexus, we today express no opinion on the matter.  *Cf. Sheffield v. Allstate Life Ins. Co.,* 756 F.Supp. 309 (S.D.Tex.1990).

[9]*MDPhysicians & Assoc.,* 957 F.2d at 183 n. 7.

[10]29 U.S.C. § 1002(3).

[11]29 U.S.C. § 1002(1).

an "employee welfare benefit plan"; we ask whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—establishment or maintenance by an employer intending to benefit employees. If any part of the inquiry is answered in the negative, the submission is not an ERISA plan. Our analysis is informed by reference to ERISA itself, including germane indications of congressional intent; and, to the extent Congress has failed to state its intention on the precise issue in question, we refer to reasonable interpretations by the agency charged with administering the statute—the Department of Labor.

At the outset, any court confronted with the question "whether a particular arrangement constitutes an employee welfare benefit plan under ERISA "must first satisfy itself that there is in fact a plan at all.' "[12] To measure the materiality of a purported plan we turn to a test devised by our Eleventh Circuit colleagues:

> In determining whether a plan, fund, or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.[13]

In the instant case, a reasonable person could determine readily the intended benefits and that the beneficiaries were Meredith and her family. Due to the coincidence between employer and employee, however, the reasonable person might encounter greater difficulty discerning the payor of the premiums, Meredith the employee or, her alter ego, Meredith the business operation as employer.

Putting aside her husband's role, under some legal fiction perhaps Meredith might be regarded as an employee of herself and, simultaneously, an employer of herself. This conundrum seems inevitable in the context of such a small-scale and informal enterprise. It may be resolved only by assigning a definition to employer and employee, as those terms are used in ERISA. We assume for present purposes the existence of a plan.

The second prong of our analysis asks whether the plan falls within the safe-harbor provision

---

[12]*MDPhysicians & Assoc.,* 957 F.2d at 183 (citing *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991)).

[13]*Donovan,* 688 F.2d at 1373.

promulgated by the Department of Labor.[14] Meredith vigorously contends that she falls within the exemption which provides that a plan is not an ERISA plan if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; *and* (4) the employer received no profit from the plan.[15] The plan must meet all four criteria to be exempt. Again our analysis is hampered by the elusive definitions of "employee" and "employer" in the context of an employee benefit plan.

We therefore turn to step three in our analysis to determine whether the assumed plan falls within the broad parameters of ERISA. We look to the two "primary elements of an ERISA "employee welfare benefit plan' as defined by the statute: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees."[16] We cannot answer either question without first considering the bounds of the terms "employer" and "employee."[17] We have thus come full circle and perforce must determine whether Meredith is both an employer and an employee for the purposes of ERISA so as to accept Time's claim that the plan is an employee welfare benefit plan.

We may resolve our dilemma by remaining mindful that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms."[18] ERISA simply provides that an

---

[14]*Gahn,* 926 F.2d at 1452.

[15]29 C.F.R. §§ 2510.3-1(j)(1)-(4) (1992).

[16]*MDPhysicians & Assoc.,* 957 F.2d at 183 (quoting *Hansen,* 940 F.2d at 977) (citing 29 U.S.C. § 1002(1))). In *Memorial Hosp. Sys.,* we agreed with the en banc Eleventh Circuit that

> the purchase of insurance does not conclusively establish a plan ..., but the purchase is evidence of the establishment of a plan ...,

[17]We encountered similar difficulty defining the term "employer" in *MDPhysicians* where we found no employment relationship to exist between the administrators and the participants of the plan because the "entity that maintain[ed] the plans and the individuals that benefit from the plan [were not] tied by a common economic or representation interest, unrelated to the provision of benefits." It would appear that the present case rests at the extreme opposite end of this spectrum. Meredith is not only tied to the participants in the plan by a common economic or representation interest, *she is the participant.*

[18]*Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

employee is "any individual employed by an employer."[19]  The term "employer" includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."[20]  An "employee benefit plan" is any plan established or maintained "by an employer or employee organization."  The problem lies, obviously enough, in determining what is meant by these oblique definitions of employer, employee, and employee welfare benefit plan.  The definitions would tend to support a conclusion requiring the employer and employee to be separate entities, particularly when read in light of the interpretation the terms have been given by the Department of Labor.[21]

The First Circuit in *Kwatcher v. Massachusetts Employees Pension Fund*[22] declared "[e]mployer and employee are plainly meant to be different animals ... the twain shall never meet." In the last Term, the Supreme Court voiced its approval of the *Kwatcher* court's dichotomy, although it rejected other aspects of the decision.  In *Nationwide Mutual Ins. Co. v. Darden,*[23] the Court found ERISA's definition of employee to be of little aid and deemed the common-law meaning controlling. Thus, traditional master-servant definitions apprise us of congressional intent.[24]  The remainder of our analysis focuses thereon.[25]

The regulations clarify what otherwise would be an interpretive quagmire.  The Department of Labor, acting pursuant to its expressed rule making authority,[26] happily has issued interpretive

---

[19]29 U.S.C. § 1002(6).

[20]29 U.S.C. § 1002(5).

[21]ERISA also provides that "the assets shall never inure" to the employer's benefit.  29 U.S.C. § 1103(c)(1).

[22]879 F.2d 957, 959 (1st Cir.1989) (internal quotations omitted).

[23]--- U.S. ----, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

[24]*Id.* at ----, 112 S.Ct. at 1348-49.

[25]*See Lechmere, Inc. v. NLRB,* --- U.S. ----, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) ("before we reach any issue of deference to the Board, however, we must determine whether [the agency interpretation] is consistent with our past interpretation of [the statute]."); *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

[26]ERISA authorizes the Secretary of Labor to "proscribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter."  29 U.S.C. § 1135.

regulations which shed considerable light on the meaning to be ascribed to employee, employer, and employee welfare benefit plans. They do more. They declare certain types of plans beyond ERISA's scope. The Department of Labor defines "employee benefit plan" to exclude "plans without employees."[27]

> [T]he term employee benefit plan shall not include any plan fund or program, other than an apprenticeship, or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called Keogh or H.R. 10 plan under which only partners *or only a sole proprietor* are participants covered under the plan *will not be covered under title I.* However, a Keogh plan in which one or more common-law employees, *in addition to the self-employed individuals* are participants covered under the plan [emphasis added].

The section goes on to clarify ERISA's definition of employee by declaring that

> "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse."

These regulations clearly prevent Meredith from being simultaneously an employer and an employee. Her act of purchasing insurance for herself and her husband, although done under the color of her commercial status, did not create an employee welfare benefit plan. Whether these regulations are binding may be determined by reference to *Chevron U.S.A., Inc. v. Natural Resources Defense Council*[28] and its progeny.

Chevron purported to establish a simple and predictable method for determining administrative abstention, directing the posing of two essential questions: Is the statute ambiguous and if so, is the agency's reading a reasonable interpretation of the ambiguous provision? If the answer to both questions is "yes" the inquiry ends. Grounded as it is in the need to preserve harmonious relations between the coordinate branches, Chevron expressly conditions deference on some indication in the statute that Congress intended to delegate interpretive authority to the executive branch.[29] Only in that case may we cede our traditional duty to say what the law is.

---

[27]29 C.F.R. 2510.3-3 (1992) (emphasis added and internal quotations omitted).

[28]467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

[29]Thus the Court made clear that the power of administration "necessarily requires the formulation of policy and the making of rules to fill any [gaps]." Such a delegation can be express or, as in *Chevron,* implied. *Id.* at 844, 104 S.Ct. at 2782. In the absence of such evidence of

In *Robertson v. Alexander Grant Co.*[30] we considered whether ERISA applied to a plan which, though otherwise qualified, only covered partners. After reviewing the language and the legislative history of ERISA we concluded that Congress did not speak to the precise issue in question and accordingly we deferred to what we determined to be a reasonable interpretation on the part of the agency. Applying the regulations, we concluded that partners were outside the scope of ERISA's definition of employees and therefore outside the scope of ERISA.

Our decision in *Robertson* forecloses any debate in this circuit about the binding effect of the Department of Labor's regulations. We have reviewed the question in detail in this slightly different context only to give proper consideration to subsequent development.[31]

ERISA "has produced a complex and highly technical regulatory program."[32] The identification and classification of persons and plans covered requires a considerable degree of dedicated expertise. Moreover, the statute itself lends little guidance to this significant question. We conclude that Congress intended in ERISA to delegate to the Secretary of Labor broad policy-making discretion in the promulgation of regulations to "fill in the gaps" with respect to the finite definition of employer and employee under the statute.[33] The Secretary's adherence to this reading of ERISA has been unflagging[34] and, consistent with *Chevron's* command of deference to coordinate branches,

delegation the matter is for the judiciary. *E.g., Adams Fruit Co. v. Barrett,* 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (courts do not defer where the provision in question is directed to the judiciary); *INS v. Cardoza-Fonseca,* 480 U.S. 421, 428, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (a pure question of law is reserved for the judiciary).

[30]798 F.2d 868 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987).

[31]The precise boundaries of the *Chevron* doctrine, albeit a bit unclear, have solidified somewhat since our decision in *Robertson.*

[32]*Pauley v. Bethenergy Mines, Inc.,* --- U.S. ----, ----, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991) (speaking of the Federal Coal Mine Health and Safety Act of 1969).

[33]*Martin v. OSHRC,* --- U.S. ----, ----, 111 S.Ct. 1171, 1177, 113 L.Ed.2d 117 (1991).

[34]The interpretation has remained since 1975. In *Robertson* we commented that "Congress has twice amended the ERISA's definition sections since the statute's enactment and in neither instance has Congress altered the definition of employee or employee benefit plan, thereby adding weight to the Secretary's interpretation of the terms." *Robertson,* 798 F.2d at 871. Eight years later we notice that Congress has put the definition sections under the knife in 1986, 1987, 1989,

so long as the Secretary's interpretation is reasonable, we are not wont to substitute our judgment.

In identical or like circumstances, our colleagues on the First,[35] Second,[36] Sixth,[37] Seventh,[38] Ninth,[39] and Tenth[40] Circuits have reviewed ERISA and the regulations promulgated by the Department of Labor and concluded that the result reached by the Department of Labor was reasonable. We agree.[41]

The Department of Labor has adopted an interpretation consistent with ERISA's primary objective: "Safeguarding the well-being and security of working men and women and to appraise them of their rights and obligations under any employee benefit plan."[42] When the employee and employer are one and the same, there is little need to regulate plan administration. Moreover, the Department of Labor's construction of ERISA accords with the Supreme Court's adoption of common-law principles of agency. It would appear axiomatic that the employee-employer relationship is predicated on the relationship between two different people. In the instant case, the regulations prohibit treating the spouse of the sole proprietor as an employee. We conclude that the power to so define the scope of ERISA has been delegated by Congress to the Department of Labor,

---

1990, and 1991. The definitions of employee, and employer, and employee benefit plan remain unchanged despite the interpretations of the Secretary and the courts of appeals.

[35]*Kwatcher,* 879 F.2d 957 (sole shareholder of corporation).

[36]*Schwartz v. Gordon,* 761 F.2d 864 (2d Cir.1985).

[37]*Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d 178 (6th Cir.1992).

[38]*Giardono v. Jones,* 867 F.2d 409 (7th Cir.1989).

[39]*Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 264 (9th Cir.1991).

[40]*Peckham v. Board of Trustees,* 653 F.2d 424 (10th Cir.1981), *modified,* 724 F.2d 100 (1983).

[41]We stress that we deal here only with the limited question before us: whether a plan purchased by a sole proprietor benefiting only herself and her spouse qualifies as an ERISA plan. We do not address the role of the sole proprietor in any other context. *E.g., Trustees of the Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020 (3rd Cir.1988) (considering withdrawal liability of sole proprietorship), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989).

[42]*Donovan,* 688 F.2d at 1372.

and find no reason to disturb the Department's conclusion that ERISA does not intend to treat the spouse of a sole proprietor as an employee.

## Conclusion

ERISA preempts state laws relating to employee benefit plans. The Department of Labor has adopted a definition of "employee benefit plan" excluding plans without employees. The regulations also prohibit inclusion of Meredith's spouse in the term "employee." Such a construction is consistent with ERISA and the well-settled requirement that to constitute an ERISA plan, a plan must be established or maintained by an employer for the benefit of employees. We therefore find the interpretation to be a reasonable construction, consistent with the terms and overall purposes of ERISA. Under the controlling definition, Meredith is not an employer because she has no employees and plans without employees are, by definition, not regulated by ERISA. Accordingly, Meredith's state-law claims are not preempted.

The judgment of the district court is VACATED and the matter is REMANDED for further proceedings consistent herewith.