United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

**No. 02-41531**

_____

**Jimmie Lloyd Carmack, Christopher J. Daly III,
Peter T. Wirt, Larry L. Lewis, and J. W. Smith,
on behalf of themselves and all others similarly situated,**

**Plaintiffs-Appellants**

**-vs-**

**Printpack, Inc.,**

**Defendant-Appellee.**

Appeal from the United States District Court
for the Eastern District of Texas
(1:98-CV-1863)

Before WIENER and CLEMENT, Circuit Judges, and LITTLE[*], District Judge.

LITTLE, District Judge:[**]

Jimmie Lloyd Carmack and the other class members appeal an adverse summary judgment in their action seeking severance benefits under an alleged ERISA plan offered by appellee, Printpack, Inc. The district court held that the alleged ERISA plan did not exist and that the class members had received all severance benefits to which they were entitled under a different ERISA plan. Because

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the district court concluded correctly that the alleged ERISA plan did not exist, this appeal is DISMISSED for lack of jurisdiction.                    I.

Appellants Jimmie Lloyd Carmack, Christopher J. Daly III, Peter T. Wirt, Larry L. Lewis, and J. W. Smith, and other similarly situated individuals ("Appellants") were employed in the Flexible Packaging Division of the James River Corporation ("JRC")[1]. In 1996, JRC and the appellee, Printpack, Inc. ("Printpack"), entered into an Asset Purchase Agreement ("purchase agreement") for Printpack's acquisition of the Flexible Packaging Division. As a result of Printpack's acquisition, Appellants' employment with JRC was terminated.

In the purchase agreement, Printpack agreed to offer employment to Appellants and other specified salaried business employees. The purchase agreement included a severance benefit provision for former JRC employees who accepted employment with Printpack. Under Section 8.4 of the purchase agreement, Printpack agreed to "establish a severance plan or amend an existing severance plan . . . which shall provide fifteen weeks of severance benefits to any [former JRC employee] who is terminated by [Printpack] at any time during the twelve-month period ending on the first anniversary of the Closing" (the "fifteen-week plan").

Within twelve months of the Closing, seventy-six former JRC employees were terminated by Printpack. Sixty-three of these former JRC employees received severance benefits under the fifteen-week plan. Thirteen of the former JRC employees negotiated individual agreements and received enhanced severance benefits. Most of the thirteen former JRC employees received enhanced

---

[1] Appellants' former employer is referred to as "Fort James Corporation" or "FJC" in Appellants' brief and is called "James River Corporation" or "JRC" in Appellee's brief. This opinion refers to the Appellants' former employer as James River Corporation or JRC, which is consistent with the name used in the district court's opinion.

severance benefits in exchange for working at Printpack for  extended periods of time.

The former JRC employees brought a putative class action against JRC for severance benefits under the JRC Salary Continuation Plan.  The JRC Salary Continuation Plan provided a comparatively generous severance benefit based upon employees' years of service.  Several of the Appellants in this lawsuit were plaintiffs in the previous action.  The action against JRC was settled by sealed agreement of the parties.  The suit against Printpack was filed in 1998.  The members of the class were confirmed by order of the district court on 3 July 2001.[2]

Appellants claim a right to additional severance benefits under an employee welfare benefit plan subject to the Employee Retirement Income Security Act ("ERISA").  29 U.S.C.A. §§ 1001-1461 (1999).  Appellants claim Printpack maintained an unwritten, informal ERISA plan, called the Printpack Four + One Severance Plan ("Four + One plan"), during their employment.  Appellants believe the Four + One plan was made available to them pursuant to Section 8.2(b) of the purchase agreement.  Section 8.2(b) states Printpack shall ". . . treat service of each [former JRC employee] . . . as if such service had been with [Printpack] for purposes of determining eligibility to participate, eligibility for benefits, benefit calculations, benefit forms and vesting under [Printpack's] employee benefit plans [subject to ERISA] . . . other than [Printpack's] retiree medical plan and [Printpack's] retiree group life insurance plan."[3]

Appellants apparently learned of the Four + One plan during discovery conducted in the initial

---

[2] Class members consist of all former non-union salaried Printpack employees who 1) had been JRC employees; 2) became Printpack employees in August 1996 pursuant to the purchase agreement; 3) were terminated by Printpack; and 4) did not receive severance benefits under the Printpack Four + One Severance Plan.

[3] Both parties accept that the Four + One plan is neither a retiree medical plan nor a retiree group life insurance plan and is not affected by Section 8.2(b)'s preclusion of these two types of plans.

3

action against JRC. The Four + One plan originated in 1996 when Printpack, hoping to reduce corporate and administrative positions, initiated a voluntary resignation plan. Between February and May of 1996, employees who resigned voluntarily were given a severance benefit of four times their weekly salaries, plus two times their weekly salaries for each year of employment with Printpack. Printpack also announced it would resort to involuntary terminations if the necessary number of employees did not voluntarily resign; involuntarily terminated employees would be given the four-week salary payment and one week's salary for each year of employment with Printpack. The necessary number of employees resigned voluntarily, so Printpack did not resort to involuntary terminations and never paid severance benefits under the Four + One plan. There is no dispute that Appellants may not receive severance benefits under the voluntary resignation plan because that plan terminated before Appellants became Printpack employees. Rather, Appellants base their claim for severance benefits upon the Four + One plan Printpack would have given to involuntarily terminated employees in 1996.

The parties' initial cross motions for summary judgment were denied. At the request of the district court, the parties submitted additional briefing and moved for summary judgment. Again, the motions for summary judgment were denied, and the district court requested additional information and further factual development from Appellants and Printpack, respectively. On 26 September 2002, the district court granted Printpack's motion for summary judgment and denied the Appellants' motion, dismissing their claims against Printpack. In its Opinion and Final Judgment, the district court concluded the Four + One plan did not meet the criteria for plans governed by ERISA. The district court further found that even if the Four + One plan was a plan governed by ERISA, Appellants were entitled only to severance benefits under the fifteen-week plan established in Section

8.4 of the purchase agreement.

Appellants timely filed this appeal of the district court's judgment.

II.

The dispositive issue in this appeal is whether an ERISA plan exists in the form of the Four + One plan. We find for the reasons that follow that there is no ERISA plan. *A.    Standard of Review*

The court reviews a grant of summary judgment *de novo*. See Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). The grant of summary judgment may be affirmed only if there is no dispute of material fact and the prevailing party is entitled to judgment as a matter of law. McDonald v. Provident Indemnity Life Insurance Co., 60 F.3d 234, 235 (5th Cir. 1995)(citing Fed. R. Civ. P. 56(c)). The existence of an ERISA plan is a central issue in this appeal. Because the existence of an ERISA plan is a question of fact, our initial inquiry is whether a reasonable trier-of-fact could have found that the Four + One plan was an ERISA plan based upon the summary judgment evidence. Id.; see also Meredith v. Time Insurance Co., 980 F.2d 352, 353 (5th Cir. 1993); Gahn v. Allstate Life Insurance Co., 926 F.2d 1449, 1451 (5th Cir. 1991).

*B.    Whether a plan exists*

ERISA is a vast statutory scheme that governs "any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce; or by an employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or by both." 29 U.S.C.A. § 1003(a) (1999); Memorial Hospital System v. Northbrook Life Insurance Co., 904 F.2d 236, 240 (5th Cir. 1990). There are two types of employee benefit plans: employee welfare benefit plans and employee

5

pension benefit plans. 29 U.S.C.A. § 1002(3) (1999). ERISA defines an employee welfare benefit plan as

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment. . . .

29 U.S.C.A. § 1002(1) (1999). A severance plan falls within this definition of an employee welfare benefit plan. See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7 n.5, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); Amatuzio v. Gandalf Systems Corp., 994 F.Supp. 253, 264-65 (D. N.J. 1998).

The Fifth Circuit applies a three-part test when determining whether a plan is governed by ERISA. Meredith, 980 F.2d at 355. To come within ERISA's scope, the plan must 1) exist; 2) fall outside of the Department of Labor's safe-harbor provision; and 3) be an employee benefit plan established or maintained by an employer for the benefit of employees. Id. The district court ended its inquiry after deciding the Four + One plan did not meet the first prong of this test. Appellants now challenge the district court's determination that a plan did not exist because the intended benefits of the Four + One plan could not be ascertained. See Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)(en banc).

Our review, thus, begins with the application of the three-part test and the primary question of whether a plan exists. Meredith, 980 F.2d at 355 (stating, "[A]ny court confronted with the question whether a particular arrangement constitutes a plan under ERISA must first satisfy itself that there is in fact a plan at all." (citations omitted)). A plan exists if "'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" Id. (citing Donovan v. Dillingham, 688

6

F.2d 1367, 1373 (11th Cir. 1982)(en banc));[4] see also Memorial Hospital System, 904 F.2d at 240.

There is no written document setting forth Printpack's severance benefit plan, but the absence of a writing does not preclude the finding that a plan exists. Memorial Hospital System, 904 F.2d at 241 (stating a contract or formal written document is not required to establish the existence of an ERISA plan). The parties submitted statistical evidence and deposition testimony about the character of the Four + One plan. We rely upon this information to evaluate the Four + One plan.

The summary judgment evidence included a numerical breakdown of Printpack employees who have received severance benefits since 1994. Excluding employees who voluntarily resigned in 1996 and the former JRC employees, there have been seventy-seven not-for-cause, involuntarily terminated employees at Printpack. Forty-three of these seventy-seven terminated employees received severance benefits. Seventeen of these forty-three employees received severance benefits equal to four weeks' salary plus one week's salary for each year of service. The remaining twenty-six employees' severance benefits varied, with some receiving more and some receiving less than four weeks' salary plus one week's salary for each year of service. Thirty-four not-for-cause, involuntarily terminated Printpack employees received no severance benefits.

The summary judgment evidence also included the deposition testimony of Nicklas Stucky, Printpack's vice president of human resources. Stucky testified that he did not use a formula or a guideline of four-weeks-plus-one-week when calculating a terminated employee's severance benefits.

---

[4] The Eleventh Circuit's four-part test for determining whether a plan exists has been followed by numerous circuits. Memorial Hospital System, 904 F.2d at 240, n.4 (citing Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 551 (6th Cir. 1989); Ed Miniat, Inc. v. Globe Life Ins. Group Co., 805 F.2d 732, 739 (7th Cir. 1986); Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir. 1986); Scott v. Gulf Oil Corp., 754 F.2d 1499, 1503-04 (9th Cir. 1990)).

Stucky stated he had discretion to determine severance benefits, if any, on an individual, case-by-case basis. Conditions that Stucky considered when the amount of the benefit was selected were the employee's employment rank in the organization, the length of employment, and the reasons for employment termination.

The summary judgment evidence supports the district court's conclusion that a reasonable person could not ascertain the intended benefits of the Four + One plan Appellants allege existed at Printpack. Severance benefits equal to benefits under a Four + One plan have been awarded to only seventeen of seventy-seven involuntarily terminated employees. These seventeen severance benefit awards do not establish that the intended benefit for involuntarily terminated Printpack employees was four weeks' salary plus one week's salary for each year of service. The range of severance benefits awarded to involuntarily terminated employees, the absence of a formula for calculating severance benefits, and the discretion of Stucky to award severance benefits on an individual, case-by-case basis make it impossible for a reasonable person to predict if a severance benefit would be paid and, if paid, the amount that the employee would receive. See Meredith, 980 F.2d at 355.

Appellants contend that the intended benefits of the Four + One plan may be ascertained by applying the four-weeks'-plus-one-week's-salary formula. This assertion challenges Stucky's statement that he does not follow a formula when calculating an employee's severance benefits. Nevertheless, Appellants failed to produce evidence conflicting with Stucky's testimony and failed to create a genuine issue of material fact. To the contrary, the numerical breakdown of Printpack employees who have received severance benefits corroborates this testimony. Moreover, Appellants' argument—which is, essentially, that the intended benefits of the Four + One plan can be ascertained from the plan's name—overlooks the crucial question of whether Printpack actually has a Four + One

8

plan. The scant number of employees who have received severance benefits equal to four-weeks'-plus-one-week's salary cannot be relied upon to show that Printpack maintained a Four + One plan.

The remaining three issues involved in determining whether a plan exists—the class of beneficiaries, the source of financing, and the procedures for receiving benefits—need not be addressed at length. The summary judgment evidence supports the district court's finding that the class of beneficiaries, the source of financing, and the procedures for receiving benefits were reasonably ascertainable. The satisfaction of these three elements, however, does not overcome the inability to ascertain the intended benefits of the Four + One plan.

Likewise, the remaining two parts of our circuit's three-part test for determining whether a plan is governed by ERISA do not require lengthy discussion. Although it appears that if the Four + One plan were in existence it would fall outside the Department of Labor's safe-harbor provision and could be an employee benefit plan established or maintained by an employer for the benefit of employees, the plan's failure to meet the first part of the test ends our inquiry. The summary judgment evidence fails to show the existence of the plan from which Appellants seek to benefit. At all times relevant to the claims of Appellants, there was no Four+One plan in existence, and thus no possibility of the existence of a severance plan governed by ERISA for the benefit of Printpack employees.

III.

As the Four+One plan alleged by Appellants does not exist, there can be no plan at issue in this case that is governed by ERISA, and thus no federal jurisdiction. For lack of jurisdiction, this appeal is DISMISSED.

9