Dawn A. MOORE and Joseph C. Boswell, Plaintiffs,

v.

Timothy Edward POWERS, Defendant.

No. 4:03–CV–229.

United States District Court, E.D. Texas, Sherman Division.

Aug. 18, 2003.

Monroe "Mike" Allen Windsor of Loe, Warren, Rosenfield, Kaiter & Hibbs, Fort Worth, TX, for Plaintiffs.

Grace Ann Weatherly of Wood, Thacker & Weatherly, Denton, TX, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

DAVIS, District Judge.

Plaintiffs Dawn A. Moore ("Moore") and Joseph C. Boswell ("Boswell") (collectively "Plaintiffs") filed this action on May 13, 2003, against Defendant Timothy Edward Powers ("Powers") in the 158th Judicial District Court of Denton County, Texas. Plaintiffs allege claims against Defendant for breach of contract, conversion, unjust enrichment, actual fraud, constructive fraud, and breach of fiduciary duty. Defendant removed this action to this Court on June 13, 2003, asserting federal jurisdiction under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.

§§ 1001–1461. Pending before the Court is Plaintiffs' Motion to Remand (Docket No. 5). For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion to Remand.

## BACKGROUND

On December 21, 1998, Powers and Boswell entered into an employment agreement. Both Powers and Boswell are attorneys and Powers operated his legal practice under the name, "The Law Offices of Tim Powers." The employment agreement provided for, among others, that Powers would (1) hire Boswell as an attorney, (2) pay Boswell a base salary, (3) give Boswell sixty days written notice of terminations, and (4) allow Boswell to enter into a "partnership agreement" at the end of twenty-four months.

In January 2000, Powers and Boswell agreed that Boswell could purchase a 24 percent "share" for $500.00 per share. In January 2000, Boswell purchased a six percent share for $3,000. In January 2001, Boswell purchased an additional six percent share for $3,000. In January 2002, Boswell purchased an additional six percent share for $3,000. Thus, he claims he has an 18% share.

Boswell alleges that Powers failed to pay him 18% of the law firm's profits for 2002. On March 18, 2003, Powers paid Boswell $5,000. Boswell contends that Powers stated that he would be paid $40,000 for the 2002 distribution. No accounting was provided. On March 23, 2003, Boswell's employment was terminated and he alleges that he never received the profits he was owed. He claims his employment was terminated without the sixty day notice. He is also claiming monetary damages for loss of accrued vacation time.

On March 1, 2002, Powers and Moore entered into an employment agreement. Like Boswell's employment agreement, Moore's agreement provided for, among others, that Powers would (1) hire Moore as an attorney, (2) pay Moore a base salary, (3) give Moore sixty days written notice of terminations, and (4) allow Moore to enter into a "partnership agreement" at the end of six months. Powers and Moore further agreed that Moore could buy a twelve percent share for $600 per share and that Moore would be paid her share of the law firm profits in January and June of each year.

In August 2001, Moore purchased a three percent share for $1,800. In January 2002, Moore purchased an additional three percent share for $1,800 and that amount be withheld from her profit distribution. In June 2002, Moore purchased an additional three percent share for $1,800 and that amount would likewise be withheld from her profit distribution. Moore claims that she never received any distribution for the law firm profits related to her 9% share. Moore further alleges that on March 17, 2003, Powers orally terminated her employment without the required sixty day notice.

Defendant argues that plaintiffs' claims for profits is necessarily a claim for employee benefits under Defendant's profit-sharing plan. In their Motion to Remand, Plaintiffs argues that there never existed a profit sharing plan. They claim their payments to Defendant were for an interest in the law firm partnership. Plaintiffs also contend that even if there existed a profit-sharing plan, it was not an "employee welfare benefit plan" under ERISA, and, thus, this Court lacks subject matter jurisdiction. Defendant, on the other hand, argues that the profit-sharing plan is an "employee welfare benefit plan" under ERISA, this Court has jurisdiction, and Plaintiffs' state law claims are preempted by ERISA.

## FEDERAL JURISDICTION UNDER ERISA

■ The removing party bears the burden of showing that removal was proper. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Removal of a state law action to federal court is proper when the complaint falls within the original jurisdiction of the federal district court. *See* 28 U.S.C. § 1331. Where, as here, there is no diversity of citizenship between the parties, the propriety of removal depends upon the existence of a federal question, *i.e.*, whether any of plaintiffs' claims "arise under" federal law. *See* 28 U.S.C. § 1331. An action arises under federal law when the face of the "well pleaded complaint" raises a federal issue. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The well-pleaded complaint rule is qualified, however, by the complete preemption doctrine. As the Supreme Court stated in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." The Supreme Court ruled that ERISA is such an area, and that state law claims are preempted by ERISA provided that they "relate to" an ERISA plan. *Id.*

Defendants removed this action alleging ERISA preempts Plaintiffs' various state law claims, thereby conferring this Court with original jurisdiction over the action. Plaintiffs in their motion to remand for improper removal, argue that there never existed a profit-sharing plan and even if one existed it is not an "employee welfare benefit plan" and, thus, not subject to ERISA. Accordingly, Plaintiffs argue that the Court does not have subject matter jurisdiction. This Court must address whether Defendant's profits-sharing plan is an "employee benefit plan" as defined by ERISA.

## EMPLOYEE WELFARE BENEFIT PLAN

■ ERISA defines the terms "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Sections 1002(1) and (2) provide the following definitions of an employee welfare benefit plan and employee pension benefit plan:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services. . . .

(2)(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(1)(A), (2)(A) (1994). Accordingly, the plain language of ERISA's statutory definition provides that a plan must be a welfare and/or pension plan to be an ERISA plan. 29 U.S.C. § 1002(3); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir.1980). Thus, the Court must decide initially whether the alleged profit-sharing plan [1] is a welfare and/or pension plan.[2]

1. As a preliminary matter, the Court notes that the agreement at issue is more akin to a profit-sharing *agreement* than an employee profit-sharing *plan*. In the employment agreement, the alleged profit-sharing plan is referred to as a "partnership agreement," if it is referred to at all. No written documents exist regarding the alleged profit-sharing plan.

A profit-sharing plan is:

[A] plan established and maintained by an employer to provide for the participation in his profits by his employees or their beneficiaries. The plan must provide a definite predetermined formula for allocating the contributions made to the plan among the participants and for distributing the funds accumulated, under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as a layoff, illness, disability, retirement, death, or severance of payments.

Treas. Reg. § 1.401–1(b)(1)(ii). The alleged profit-sharing plan is an agreement to purchase a "share" of profits which are to be paid at the end of each calendar year. Plaintiffs, on the other hand, allege that they were to receive a share of the profits every six months. Further, Moore alleges she paid $600 per share while Boswell claims he paid $500 per share. This indicates that there was no "definite predetermined formula for allocating contributions." Further, the profits are not due "after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as a layoff, illness, disability, retirement, death, or severance of payments." Moreover, in his affidavit, Powers state that part of the requirements to be eligible for the plan is that an employee work 50 hours per week. However, in her deposition, Moore state that she agreed to work 45 hours per week. Thus, it is apparent that alleged the profit-sharing plan is more akin to a profit-sharing agreement—an agreement entered into with each individual employee.

2. Both parties, at the Court's insistence, analyzed whether the alleged profit-sharing plan qualifies as an employee welfare benefit plan. However, ERISA requires that a plan must first qualify as a welfare and/or pension benefit plan in order to be an ERISA "plan." *See* 29 U.S.C. § 1002(3). Although neither party discussed this in detail, the Court will do so on its own initiative. This approach is not inconsistent with Fifth Circuit's "plan" test. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir.1993) (The decision whether a particular plan or program qualifies as an "employee welfare benefit plan" under ERISA requires that the court determine whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan" established or maintained by an employer or employee organization intending to benefit employees or members.").

Although irrelevant because the Court finds the alleged profit-sharing plan does not qualify as a welfare and/or pension benefit plan, the Court notes that under the "plan" test, it dubious as to whether a plan exists. The Court looks to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Memorial Hosp. Sys.*, 904 F.2d at 240 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)). The Court finds that a reasonable person cannot ascertain the procedures for receiving benefits. There is no formula or procedure indicating when the Defendant must make a disbursement. Defendant claims that it was at the end of each calendar year. Plaintiffs contend it was ev-

In *Murphy*, the company distributed bonuses to certain key employees, including the Plaintiff Murphy, by assigning a specific royalty interest in a drilling prospect it planned to develop. Murphy claimed the bonus plan violated ERISA. *Id.* at 572. His complaint was dismissed by the district court for lack of subject matter jurisdiction reasoning that the bonus plan was not subject to ERISA. *Id.* at 570. Relying upon 29 U.S.C. § 1002(1) for the ERISA definition of employee welfare benefit plan, 29 U.S.C. § 1002(2) for the ERISA definition of employee pension benefit plan, and the regulations promulgated thereunder, 29 C.F.R. 2510.3–2(c), the Fifth Circuit found that the bonus plan was not an ERISA plan because it "was evidently designed to provide current rather than retirement income to Inexco's employees." *Id.* at 575–76. The *Murphy* court recognized that an ERISA plan must be specifically designed to provide employees with medical, unemployment, disability, death, vacation and other specified benefits or to provide income following retirement to come within the scope of ERISA. *Id.* at 574–75. The court concluded that the bonus plan was not an ERISA plan. *Id.*

 This Court reaches the same result in the instant matter. The alleged profit-sharing plan is not a welfare and/or pension plan and, thus, is not an ERISA "plan." *See* 29 U.S.C. § 1002(3). First, the profit-sharing plan is not a welfare plan because ERISA specifically enumerates the following benefits in its definition of an employee welfare benefit plan: "medical, surgical, or hospital care or benefits, or benefits in the event of sickness,

accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." 29 U.S.C. § 1002(1)(A). The benefit of an option to purchase a "share" of firm profits is not included in this list and is of a different character than these benefits. *Murphy*, 611 F.2d at 574.

Second, the alleged profit-sharing plan is not an employee pension benefit plan because it did not include payments that were to be deferred to termination or beyond, nor was it intended to provide retirement income. *See* 29 U.S.C. § 1002(2)(A); *Murphy*, 611 F.2d at 574–75. The alleged profit-sharing plan resulted in an alleged lump-sum payment at the end of each calendar year from the firm's profits.

 Since no ERISA plan exists in this case, ERISA cannot completely preempt the Plaintiffs' state law claims. *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir.2000). Thus, there is no federal question jurisdiction and no basis for removal.

## CONCLUSION

For the reasons articulated above, the Court finds that Plaintiffs' Motion to Remand should be **GRANTED**, Accordingly, it is hereby

**ORDERED** that this case is **REMANDED** to the 158th Judicial District Court of Denton County, Texas.

ery six months. The goal of ERISA is to provide a "uniform administrative scheme" for "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropri-

ate records in order to comply with applicable reporting requirements." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). There was no administrative scheme and, further, no record keeping of the plan.