# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2025

Lyle W. Cayce
Clerk

No. 24-60381

———————————

James R. Edwards,

*Plaintiff—Appellant*,

*versus*

Guardian Life Insurance of America,

*Defendant—Appellee*.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:22-CV-145

———————————————————————————

Before King, Jones, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

After Pamela Edwards died of cancer, her widower sought payment on her life insurance policy. Guardian Life Insurance denied his claim. Jimmy Edwards then sued the insurer in federal court. The district court granted Guardian's motion for partial summary judgment. We reverse and render judgment for Edwards.

I

Pam Edwards owned and operated a beauty salon in Starkville, Mississippi called Allure Salon. She was diagnosed with cancer in 2019 and

underwent radiation, chemotherapy, and surgery thereafter. Tragically, Pam's cancer never went into remission, and she died on May 27, 2022.

Upon Pam's death, insurance agent Debbie Jaudon informed her husband, Jimmy, that Pam had a life insurance policy from Guardian. She had purchased the policy in 2007, as she "wanted to be sure that she had something to leave to her husband." ROA.160. Pam dealt exclusively with Allure's finances, so Jimmy was unaware of the policy until Jaudon informed him of its existence.

Jaudon then requested a life claim form from Guardian. But Guardian claimed the policy had been cancelled before Pam's death. The insurer argued that Pam bought a group policy to cover multiple Allure employees. But in November 2019, Allure's coverage dropped to one (Pam)—thus triggering Guardian's contractual right to cancel it.

That was news to Jaudon, Pam's insurance agent, because she never received a notice of cancellation. How so? Guardian says that in September 2020, it "temporarily suspended its practice of terminating plans that had dropped to one participant due to the COVID 19 pandemic that was impacting the entire globe." Red Br. at 6. Guardian later renewed its normal cancellation practices and terminated Pam's coverage on January 15, 2022. It nevertheless remains a mystery why Guardian never notified Jaudon of the cancellation.

Jimmy Edwards sued Guardian in the Northern District of Mississippi.[1] He brought various claims under Mississippi common law, and argued that in the alternative, ERISA entitled him to recover benefits under

---

[1] Jimmy Edwards passed away during the pendency of this case. Accordingly, the court granted a motion on June 20, 2025 to substitute his son and the executor of his estate, James R. Edwards, as appellant. *See* Fed. R. App. P. 43(a)(1).

the plan. Guardian moved for partial summary judgment, arguing ERISA governed the plan and preempted Edwards' common-law claims. The district court granted Guardian's motion. Jimmy timely appealed.

## II

As a threshold matter, we find that ERISA applies to the Allure policy. ERISA governs "any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). The mere purchase of an insurance policy does not immediately establish that ERISA applies. *See, e.g.*, *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008). Instead, to decide whether a policy qualifies as an employee benefit plan, "we ask whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements" of such a plan: "establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). Failure to satisfy any of these elements means ERISA does not apply. *Ibid.*

The parties mainly dispute whether Allure had employees—a question that implicates the first and third *Meredith* prongs. *See House v. Am. United Life Ins. Co.*, 499 F.3d 443, 450 (5th Cir. 2007) (explaining that whether a participating business has employees speaks to "the determination of the *existence* of an employee welfare benefit plan" (emphasis added)); *Meredith*, 980 F.2d at 355–56 (locating it in "step three" while acknowledging the "circ[ularity]" of the inquiry). Employee benefit plans under ERISA do not include those "[p]lans that cover only sole owners or partners and their spouses." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 21 (2004). So ERISA would not apply if Allure never had employees, making Pam the only covered member. Independent

contractor status is a question of law that this court reviews *de novo*. *Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1101 (5th Cir. 1990).

Because ERISA does not define "employee," federal courts apply federal common law to determine whether an individual qualifies. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 323 n.3 (1992). This multi-faceted inquiry "incorporate[s] traditional agency law principles." *Id.* at 323. No single factor is dispositive, but the test places "special emphasis on the issue of control." *Penn*, 898 F.2d at 1102. Additional factors include:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323–24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)).

On the limited record below, the *Darden* factors indicate Allure's salon technicians were employees. Pam owned the salon building and equipment, so she controlled where the technicians worked and their means of doing so. *See id.* at 323. She also controlled when and how long they worked by setting salon hours. *Ibid.* Allure paid their insurance premiums, which entitled it to favorable tax treatment. *Ibid.* Clients paid gross receipts to Allure, and Pam subsequently paid her employees from the Allure business account. Finally, Allure was in business and the technicians' work constituted its normal business. *See id.* at 324. Considering "all of the incidents of the relationship," *Darden*, 503 U.S. at 324 (quotation omitted),

we find that Allure's workers were employees, so a plan exists and ERISA applies.

## III

Satisfied that ERISA applies, we turn to Guardian's policy and Jimmy's claim for benefits. Under the terms of its policy, Guardian maintained its "right to cancel . . . any coverage hereunder" when "less than two employees are insured." ROA.303. That right vested when Pam Edwards became the sole participating employee effective November 1, 2019. Because Guardian could cancel the plan at any time and for any reason, its discretionary authority would normally permit the cancellation here under the generous abuse of discretion standard. *See Corry v. Liberty Life Assur. Co. of Bos.*, 499 F.3d 389, 397 (5th Cir. 2007); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (describing standard as requiring merely "evidence . . . that clearly supports the basis for its denial" (quotation omitted)); ROA.111–113 (showing Allure's plan with only one member).

But insurers can waive their discretionary cancellation rights under ERISA. The waiver inquiry "focus[es] on the unilateral action of the insurer in failing to raise at the outset a known" right. *Pitts ex rel. Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). We have held that an insurer that accepted premiums for *five* months "after learning beyond all doubt that [Plaintiff] was the only employee remaining on the policy" waived its right to cancel. *Ibid.*

We hold that Guardian waived its right to cancel Pam Edwards's plan by continuing to accept premium payments from Allure for 26 months after its cancellation right vested. Guardian's cancellation right vested on November 1, 2019. There is a conspicuous 10-month gap between that date and when Guardian started "temporarily suspending" plan cancellation in September 2020 due to COVID. *See* Red Br. at 6. Between the plan becoming

No. 24-60381

eligible for termination and its cancellation, Guardian accepted 26 months' worth of premiums. And Guardian's delay in cancellation prejudiced Pam because she was unable to conduct business over the last ten months of her life due to her mental and physical deterioration. Guardian cannot now avoid its obligation to Jimmy Edwards after accepting Allure's premiums for 26 months. *Cf. Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634, 645 (5th Cir. 1999) (reversing district court's grant of summary judgment because "a reasonable jury could conclude that Raytheon knowingly waived its right to enforce" certain insurance requirements after it "accepted premiums from Mr. Rhorer for several months").

\*      \*      \*

According to Guardian, most of its delay in canceling Allure's ERISA plan was caused by the insurer's non-cancellation policy during the COVID pandemic. Guardian asks us to recognize this "generous accommodation" as "laudatory." Red Br. at 48 & 6 n.1. But we disagree that requiring Guardian to pay Jimmy's claim "epitomizes the adage that 'no good deed goes unpunished.'" *Id.* at 48. To the contrary: Requiring Guardian to pay Jimmy's claim after it pocketed 26 months of Allure's premiums epitomizes a different adage: "You get what you pay for."

For the foregoing reasons, we REVERSE the district court's judgment and RENDER judgment for James Edwards.

6